SmithKline Beckman Corporation, Petitioner *v.*
Commonwealth of Pennsylvania, Respondent.

Argued June 5, 1984, before President Judge
CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR.,
CRAIG, MACPHAIL, DOYLE and PALLADINO.

*Robert R. Batt*, with him, *Louis W. Ricker, Bonnie
S. Brier and Sheryl L. Jones,* of counsel: *Ballard,
Spahr, Andrews & Ingersoll,* for petitioner.

*Suellen M. Wolfe*, with her, *Eugene J. Anastasio*, Deputy Attorneys General, and *LeRoy S. Zimmerman*, Attorney General, for respondent.

OPINION BY JUDGE ROGERS, October 11, 1984:

SmithKline Beckman Corporation (SmithKline), a Pennsylvania business corporation doing business in this and other states, has appealed from an order of the Board of Finance and Revenue sustaining the Department of Revenue's resettlement of its capital stock tax for the year ending December 1977 by which the Department included $53,969,534 of dividends and $56,446 of interest on United States obligations received by SmithKline in the numerator and denominator of the sales factor described by Section 401(3)2.(a)(15) of the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6, *as amended*, P.L. 1287, 72 P.S. §7401(3)2.(a)(15).

The parties submitted the following stipulations of facts which we adopt as our findings of facts:

1.  Petitioner, SmithKline Beckman Corporation (formerly SmithKline Corporation and referred to hereinafter as "SmithKline"), is a Pennsylvania Corporation having its principal office at One Franklin Plaza, Philadelphia, Pa. 19103. During 1977, the taxable year here involved, taxpayer's principal office was located at 1500 Spring Garden Street, Philadelphia, Pa. 19130.

2.  Except as the context indicates otherwise, all facts stated herein in the present tense are equally applicable to the year 1977.

3.  SmithKline is principally engaged in the manufacture and sale of pharmaceutical products and does business and is subject to corporate business taxes in Pennsylvania and else-

where. In addition, SmithKline has numerous wholly-owned U.S. and non-U.S. subsidiary corporations, which are principally engaged in the manufacture and/or sale of pharmaceutical and other health care products, as well as diagnostic, analytical, electronic and ultrasonic products and the furnishing of clinical laboratory services.

4. During 1977 SmithKline received corporate dividends from the following sources and in the following amounts:

| Payor | Amount |
|---|---|
| U.S. subsidiary corporations (wholly-owned): | |
| Menley and James Laboratories, Ltd. | $ 5,400,000 |
| Norden Laboratories, Inc. | 3,770,000 |
| Avoset Food Corp. | 1,000,000 |
| SK&F Co. | 38,000,000 |
| SK&F Export Corp. | 1,691,847 |
| Non-U.S. subsidiary corporations (wholly-owned): | |
| Edmonton Laboratories, Ltd. | 360,000 |
| Krautkramer G.m.b.H. | 3,747,134 |
| Unrelated: | |
| Fidelity Trend Fund | 553 |
| Total | $53,969,534 |

5. The businesses of the subsidiary corporations listed in paragraph 4 above are as follows:

(a) Menley and James Laboratories, Ltd. ("M&J") is a distributor of proprietary pharmaceutical products manufactured by Smith-

Kline. M&J is headquartered in Philadelphia, Pennsylvania, and sells to wholesale customers and retail drug chains throughout the United States from distribution points which in 1977 were all located outside Pennsylvania. In 1977 M&J also marketed a line of cosmetic products.

(b) Norden Laboratories, Inc. manufactures veterinary pharmaceutical products at its plant in Lincoln, Nebraska, and sells such products to customers throughout the United States.

(c) Avoset Food Corp. (disposed of by SmithKline in 1978), manufactures food products at its plant in Oakland, California and sells them to customers throughout the United States.

(d) SK&F Co. manufactures ethical pharmaceutical products in Puerto Rico and sells them to customers throughout the United States.

(e) Edmonton Laboratories, Ltd., situated in Edmonton, Alberta, performs clinical diagnostic testing for the medical profession in Canada.

(f) Krautkramer G.m.b.H. manufactures and sells equipment for non-destructive testing and thickness guaging [sic] of metals, doing so in the Federal Republic of Germany.

(g) SK&F Export Corp. is a Domestic International Sales Corporation, as defined in Section 992(a) of the U.S. Internal Revenue Code, which in 1977 was based in Reno, Nevada and through which export sales are made by SmithKline and several of SmithKline's other domestic subsidiary corporations.

6. None of the subsidiary corporations described in paragraph 5 hereof is incorporated under Pennsylvania law. With the exception

of M&J, none of the said subsidiaries files corporate tax reports in Pennsylvania. M&J files corporate tax reports in Pennsylvania and in seven other states.

7. During 1977 SmithKline received interest totaling $56,446 on short-term obligations of the United States.

8. On or about October 16, 1978, pursuant to an extension granted it by the Department of Revenue, SmithKline filed its combined Pennsylvania Capital Stock-Loans-Corporate Net Income tax report for the calendar year 1977. SmithKline reported therein a Capital Stock Tax liability of $56,081 based on a capital stock value of $220 million and an apportionment percentage of 2.54912%, computed as follows:

$$\frac{\$\ 4,420,852}{163,230,032} = .0272505$$

$$\frac{\$\ 2,574,623}{82,607,784} = .0311668$$

$$\frac{\$\ 3,796,549}{210,262,300} = .0180563$$

$$3\ [\frac{.0764736}{.0254912}$$

. . . .

9. The above apportionment percentage was computed by the use of the three-factor formula prescribed by section 602(b) of the Tax Reform Code of 1971 for foreign corporations and available to domestic corporations under section 602(a) on an elective basis. The numerators of the three factors reflected the manufacturing exemption provided for by section 602(b). Because of the manufacturing exemp-

tion, the numerator of the first fraction was reduced to $4,420,852 from $131,011,137; the numerator of the second fraction was reduced to $2,574,623 from $64,342,704; and the numerator of the third fraction was reduced to $3,796,-549 from $25,268,642.

10. In its report SmithKline excluded from the numerator and the denominator of the sales apportionment factor, *inter alia,* the dividend income and interest on United States government obligations referred to in paragraphs 4 and 7 above. The excludability of such dividend income and interest is the sole issue in this proceeding.

11. Thereafter the Department of Revenue, with the approval of the Department of the Auditor General, settled SmithKline's 1977 Capital Stock Tax liability in the amount of $73,923.90. In said settlement the taxing officers increased the value of SmithKline's capital stock to $290 million but in all other respects accepted its Capital Stock report as filed. For purposes of this appeal, the parties agree that the correct value of SmithKline's capital stock is $290,000,000: said value is not at issue in this proceeding. . . .

12. Thereafter, and on February 27, 1981, the Department of Revenue, based on a field audit, resettled SmithKline's 1977 Capital Stock Tax on its own initiative pursuant to section 407(b) of the Tax Reform Code of 1971. On March 17, 1981 the Department of the Auditor General approved said resettlement. The tax as resettled was $410,901. The increase in tax of $336,977.10 was caused by an increase in the apportionment percentage from 2.5491% to 14.16-

90%. The resettled apportionment factors were as follows:

$$\frac{\$ \quad 6,024,853}{162,230,032} = .037138$$

$$\frac{\$ \quad 3,028,803}{82,607,784} = .036665$$

$$\frac{\$ \quad 109,033,720}{310,402,032} = .351266$$

$$3 \quad [ \quad \frac{.425069}{.141690}$$

. . . .

13. In making the said resettlement the taxing officers made certain adjustments to all three apportionment factors. SmithKline accepts the resettled first and second factors. These resettled factors are not at issue in this appeal. SmithKline is appealing the change made in the third (sales) factor caused by including in the numerator and denominator the dividends and interest on United States government obligations referred to in paragraphs 4 and 7 above.

14. SmithKline timely filed a Petition for Review with the Board of Finance and Revenue in which it contested, *inter alia,* the inclusion of dividends and interest on United States obligations in the numerator and denominator of the sales apportionment factor. On February 24, 1982 the Board of Finance and Revenue refused the said petition and sustained the action of the taxing departments. . . .

15. For taxable periods prior to the effective date of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6 ("Tax Reform Code"),

it was the practice of the Department of Revenue to include dividends and interest on United States obligations in the denominator of the gross receipt apportionment fraction for purposes of the Corporation Net Income Tax imposed by the Act of May 16, 1935, P.L. 208, the Foreign Franchise Tax imposed by the Act of May 16, 1935, P.L. 184 (both as amended), and the Capital Stock Tax imposed by the Act of June 1, 1889, P.L. 420 (subsequent to amendment by the so-called Rockwell Amendment, Act of October 19, 1967, P.L. 446), and also to include receipts of these classes in the numerator of the gross receipts fractions in the case of corporate taxpayers having their commercial domicile in Pennsylvania. This practice dated back at least to the decision of the Pennsylvania Supreme Court in *Commonwealth v. Koppers Company Inc.*, 397 Pa. 523 (1959), and was required by the express terms of the cited statutes.

16. Following enactment of the Tax Reform Code, the Department considered the treatment of dividends and interest on United States obligations for apportionment purposes under the Corporate Net Income tax imposed by Article IV of the Tax Reform Code and the Capital Stock Tax and Foreign Franchise Tax imposed by Article VI of the Tax Reform Code for taxable periods governed by the said Code. Thereafter, and under date of May 18, 1973, the Director of the Bureau of Corporation Taxes of the Department of Revenue advised all taxing officers that dividends received and interest on United States obligations should be excluded from the sales apportionment factor for Corpo-

rate Net Income, Capital Stock and Foreign Franchise Tax purposes. . . .

17. Under date of November 1, 1974 the Director of the Bureau of Corporation Taxes advised all taxing officers of a revision of the Bureau's position under which the exclusion of dividends and interest on United States obligations from the sales factor applied to Corporate Net Income Tax but not to Capital Stock Tax or Foreign Franchise Tax. . . .

18. On July 27, 1974, and again on July 26, 1975, the Secretary of Revenue caused the publication of proposed corporate tax regulations. On November 13, 1975, following the holding of a hearing thereon, the proposed regulations were adopted with certain changes, subject to approval as to legality by the Department of Justice. After being approved by the Department of Justice, the regulations were filed with the Legislative Reference Bureau in accordance with 45 P.S. §1409 (since repealed) and published in final form on December 12, 1975. The document transmitting the regulations from the Department of Justice to the Legislative Reference Bureau bore a certification "approved as to legality" signed by Donald J. Murphy, Deputy Attorney General. Mr. Murphy is now Chief Deputy Attorney General, Tax and Finance Section, Office of the Attorney General. . . .

19. The pertinent provision of the said regulations, codified at 61 Pa. Code §153.26(a), prescribes the exclusion of interest on United States securities and dividends received from the sales apportionment factor for Corporate Net Income Tax purposes. The Department of

Revenue has at no time proposed or promulgated regulations dealing with the inclusion in, or exclusion from, the sales apportionment factor of these or any other classes of income for purposes of the Capital Stock Tax or the Foreign Franchise Tax.

20. Under date of January 11, 1980 the Director of the Department of Revenue's Bureau of Examination issued Corporation Tax Memoranda Nos. 100 and 101, in both of which prior departmental positions were expressly reversed. In Corporation Tax Memorandum No. 100 it was ruled that nonbusiness income should be excluded from the sales apportionment factor for Capital Stock Tax and Foreign Franchise Tax purposes. In Corporation Tax Memorandum No. 101 it was ruled that dividends and interest on United States obligations should be similarly excluded. . . .

21. Under date of February 3, 1981 the Director of the Bureau of Examination issued Corporation Tax Memorandum No. 106 withdrawing and superseding Corporation Tax Memorandum Nos. 100 and 101. Corporation Tax Memorandum No. 106 restated the holding in Corporation Tax Memorandum No. 100 concerning the exclusion of non-business income from the numerator and denominator of the sales factor for Capital Stock Tax and Foreign Franchise Tax purposes, but ruled that dividends and interest on United States obligations should be included in the sales factor. . . .

22. The treatment of dividends and interest on United States obligations for purposes of the sales apportionment factor has been the subject of numerous memoranda with the Department

of Revenue and the Office of Attorney General and among these two Departments. . . .

23. As of the date of this Stipulation the Department of Revenue, consistent with 61 Pa. Code §153.26(a), *supra,* is excluding dividends and interest on United States obligations from the numerator and denominator of the sales apportionment factor for Corporate Net Income Tax purposes. For purposes of Capital Stock Tax and Foreign Franchise Tax, on the other hand, the Department is including income of these classes in the denominator of the sales apportionment factor in all cases, and in the numerator as well as in the case of corporations having their commercial domicile in Pennsylvania. Except with respect to the Corporate Net Income Tax (see paragraphs 18 and 19 above) the Department's position has never been published.

24. For 1977 Corporate Net Income Tax reporting purposes, consistently with its method of reporting under the Capital Stock Tax, SmithKline excluded from the numerator and the denominator of the sales apportionment factor its dividend income and interest on United States government obligations. The Department of Revenue, with the approval of the Department of the Auditor General, did not disturb this treatment of these items in settling and subsequently resettling SmithKline's Corporate Net Income Tax. Had such dividends and interest been included in the numerator and denominator of the sales factor, it would have resulted in an increase in SmithKline's Corporate Net Income Tax liability of approximately $114,000.

25. SmithKline's 1977 Capital Stock Tax liability if the issue of the excludability of dividends and interest on United States obligations is decided in its favor [would result in an additional tax of $42,691 due to the Commonwealth] .... SmithKline's tax liability if the said issue is decided in Respondent's favor [would result in an additional tax of $236,034 due to the Commonwealth].

26. The Court may take judicial notice of all federal and state statutes, rules and regulations deemed relevant to a determination of the issues in this proceeding. . . .

27. The parties hereto reserve the right to introduce additional evidence, not inconsistent herewith, into the record at the time of trial and to object to the relevancy or materiality of any such additional evidence offered into the record and of any facts set forth in or attached as exhibits to this Stipulation.

## DISCUSSION

The issue for our review is that of whether dividends received and interest from United States obligations are to be included in the numerator and denominator of the sales factor for purposes of calculating SmithKline's capital stock tax for the 1977 tax year. Legal advisors and other officials of the Department of Revenue, from time to time, have disagreed among themselves as to how this issue should be resolved and there are good arguments in support of both the inclusion and the exclusion of these items from the sales factor.

Section 602(b)(1) of the Tax Reform Code, *as amended* by Section 2 of the Act of July 1, 1978, P.L. 594 provided for an annual tax:

at the rate of ten mills for the calendar year 1971 and the fiscal year beginning in 1971 and each year thereafter, upon a taxable value to be determined in the following manner. The actual value of its whole capital stock of all kinds, including common, special, and preferred, shall be ascertained in the manner prescribed in section 601 of the article. The taxable value shall then be determined by employing the relevant apportionment factors set forth in Article IV . . . .

Article IV of the Tax Reform Code is entitled Corporate Net Income and Section 401(3)2.(a)(9), 72 P.S. §7401(3)2.(a)(9) provides that "[a]ll business income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three." The sales factor with which we are concerned is defined by Section 401(3)2.(a)(15), 72 P.S. §7401(3)2.(a)(15) as "a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period." Section 401(3)2.(a)(1)(E), 72 P.S. §7401(3)2.(a)(1)-(E) provides that sales "means all gross receipts of the taxpayer not allocated under this definition other than gross receipts heretofore or hereafter received from the sale, redemption, maturity or exchange of securities, except those held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business."

We recognized in *Greenville Steel Car Co. v. Commonwealth,* 20 Pa. Commonwealth Ct. 385, 343 A.2d 79 (1975), *aff'd,* 469 Pa. 444, 366 A.2d 569 (1976) that the scheme of allocation and apportionment for determin-

ing the taxable value of the capital stock of a foreign corporation or domestic corporation which has elected to be treated as a foreign corporation is governed by the formulas found in Article IV of the Tax Reform Code which deals with the corporate net income tax. Because the parties raise historical points concerning the interpretation placed upon the Corporate Net Income Tax Act, Act of May 16, 1935, P.L. 208, *as amended*, 72 P.S. §3420a-3420n, repealed by Section 411 of the Tax Reform Code, 72 P.S. §7411, the predecessor of Article IV of the Tax Reform Code, we begin our consideration with a description of the Act of 1935.

### The Act of 1935

This Act imposed an excise tax on the net incomes of corporations. Net income was defined in Section 2 as the "net income ... as returned to and ascertained by the Federal Government ... subject, however, to any correction thereof, for fraud, evasion, or error as finally ascertained by the Federal Government," less certain deductions not necessary to describe, and subject to the following adjustments: elimination of dividends from any other corporation (Section 2(1), 72 P.S. §3420b 1.(a)) and elimination of interest on United States obligations (*Commonwealth v. Curtis Publishing Co.*, 363 Pa. 299, 69 A.2d 410 (1949), *cert. denied* 339 U.S. 928 (1950)). When the entire business of a corporation was not transacted within the Commonwealth, the tax imposed was based on a portion of net income determined by a system of allocation and apportionment provided by the act. All gains realized and losses sustained from the sale or exchange of capital assets were allocated to the Commonwealth if such assets consisted of real estate or tangible personal property situated within the Commonwealth. When, however, such assets were situated outside of the Com-

monwealth, all gains realized and losses sustained from their sale or exchange were excluded from the amount subject to taxation. *See* Sections 2 2.(a) and (b), 72 P.S. §3420b 2.(a) and (b). The process just described is called allocation.

The remainder of the net income after these adjustments was to be *apportioned* to determine the amount to be attributed to business carried on within the Commonwealth and therefore subject to the tax. Hence, Sections 2 2.(c)(1), (2), and (3), 72 P.S. §3420b 2.(c)(1), (2), and (3) provided that the remainder of the net income after allocation was to be divided into three equal parts. One such part, and the only one which concerns us here, consisted of a fraction, the numerator of which was the amount of gross receipts from (as the statute elsewhere provided) business assignable to the Commonwealth, and the denominator of which was the amount of the taxpayer's gross receipts from all its business. The Act of 1935 provided that dividends and interest, except such dividends and interest attributable to the business conducted on premises maintained by the taxpayer outside of the Commonwealth, should be included in gross receipts. Section 2 2.(c)(3), 72 P.S. §3420b 2(c)(3).

*Commonwealth v. Koppers Co., Inc.*

In *Commonwealth v. Koppers Co., Inc.,* 397 Pa. 523, 156 A.2d 328 (1959), *appeal dismissed,* 364 U.S. 286 (1960), the Pennsylvania Supreme Court was presented with the question of whether dividends, interest from United States obligations, the gross proceeds from the conversion of assets by sale or maturity, and the gross income from investments were gross receipts includable in the gross receipts fraction for the purpose of calculating Kopper's corporate net income for the 1953 tax year under the Act of 1935.

The Supreme Court in *Koppers* defined the phrase gross receipts as including "the whole total gross receipts without any deductions." *Koppers* at 529, 156 A.2d at 322. Finding no statutory basis for excluding from gross receipts the gross proceeds from the conversion of assets by sale or maturity or gross income from investments from the gross receipts fraction, the Court concluded that these items were to be included. The Court then noted that the Act of 1935 had been amended by the Act of March 6, 1956, P.L. 1247 to exclude from the gross receipts fraction receipts from the sale, redemption, maturity or exchange of securities not held by the taxpayer primarily for the sale to customers in the ordinary course of business as of the 1956 tax year. The Court wrote that the 1956 amendment:

is clearly indicative of the fact that prior to this 1956 enactment, the inclusion of those items in the gross receipts fraction was not statutorily proscribed. Had they not been proscribed from inclusion after 1956 by the amending act, the normal definition of gross receipts would have dictated their inclusion at all times.

*Id.*

With respect to dividends and interest from United States obligations, the Court held that they too were gross receipts and thus includable in the gross receipts fraction. In so deciding, the Court rejected an argument that dividends and interest from United States obligations should be excluded from the gross receipts fraction because they are excluded from net income, writing that "[t]he exemption of dividends and interest from taxation, through their exclusion from net income to be allocated, does not also exclude those items from the gross receipts from the business activity of the corporation." *Id.*

The Tax Reform Code of 1971

Section 411 of the Tax Reform Code, 72 P.S. §7411 repeals the Act of 1935. The Tax Reform Code, as did the Act of 1935, defines net income, now called taxable income, as the "net income . . . as returned to and ascertained by the Federal Government . . . subject, however, to any corrections thereof, for fraud, evasion, or error as finally ascertained by the Federal Government" less those deductions permitted by the code. Section 401(3)1, 72 P.S. §7401(3)1. The Tax Reform Code also supplies a system of allocation and apportionment for the determination of net income of corporations engaged in taxable activities within and outside the Commonwealth.

The Tax Reform Code differed from the Act of 1935 with respect to what items of income were to be subject to allocation and what were to be subject to apportionment. Business income, defined in Section 401(3) 2.(a)(1)(A), 72 P.S. §7401(3) 2.(a)(1)(A) as that "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operation," is subject to apportionment. Section 401(3) 2.(a)(9), 72 P.S. §7401(3) 2.(a)(9). The apportionment formula in the Tax Reform Code, as that in the Act of 1935, was based on the average of three fractions now called the property factor, the payroll factor, and the sales factor. As previously mentioned, the sales factor is defined by Section 401(3) 2.(a)(15), 72 P.S. §7401(3)-2.(a)(15) as "a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales

of the taxpayer everywhere during the tax period.'' The Tax Reform Code's sales factor is the same as the Act of 1935's gross receipts fraction except for the name and the fact that the Tax Reform Code does not specifically provide that dividends and interest, except those attributable to business conducted on premises outside the Commonwealth, are to be included in the sales factor as the Act of 1935 did. The Tax Reform Code defines sales to "mean all gross receipts of the taxpayer not allocated under this definition.'' Section 401(3) 2.(a)(1)(G), 72 P.S. §7401(3) 2.(a)(1)-(G). This definition was amended by the Act of September 9, 1971, P.L. 437 to state that sales "means all gross receipts of the taxpayer not allocated under this definition other than gross receipts heretofore or hereafter received from the sale, redemption, maturity or exchange of securities, except those held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business.''

Nonbusiness income, defined in Section 401(3) 2.-(a)(1)(E), 72 P.S. §7401(3) 2.(a)(1)·(E) as "all income other than business income,'' is subject to allocation. Section 401(3) 2.(a)(7) provided that "[i]nterest and dividends are allocable'' to the Commonwealth if the taxpayer's commercial domicile is in the Commonwealth. This section was amended by the Act of September 9, 1971, P.L. 437 by deleting dividends as an item allocable to the Commonwealth.

In 1983, the Legislature again amended the definition of sales by specifically providing that dividends and interest from United States, State, or political subdivision obligations were not sales. See Section 7 of the Act of December 23, 1983, P.L. 370. The amendment of the definition of sales was made retroactive to the 1981 tax year for purposes of the corporate net

income and was made effective beginning with the 1983 tax year for purposes of the capital stock tax.[1]

The Department of Revenue's Policy Concerning the Inclusion and Exclusion of Dividends and Interest on United States Obligations in the Sales Factor

Beginning in 1971, the Department of Revenue interpreted the Tax Reform Code to require the exclusion of dividends and interest from United States obligations from the sales factor for purposes of the corporate net income tax and the capital stock tax. The Director of the Bureau of Corporation Taxes circulated a memorandum to all taxing offices to this effect in 1973.

The 1973 memorandum was replaced by a memorandum circulated by the Director in 1974 which stated that dividends and interest from United States obligations would be excluded from the sales factor for purposes of the corporate net income tax but would be

---

[1] Section 10 of the Act of December 23, 1983 concerned the Legislature's intention concerning the interpretation of the word "sales" for tax years to which the 1983 act did not apply. It stated that:

Nothing contained in section 7 (section 401(3)2.(a)-(i)(E)) shall affect or impair litigation relating to tax years prior to tax years to which this act applies. This act shall not be construed to indicate the intent of the General Assembly with regard to the status of the relevant law of the Commonwealth prior to this act. Provided, it is the intent of the General Assembly that, for tax year prior to tax years to which this act applies, for purposes of the tax imposed by Article IV of the act of March 4, 1971 [the corporate net income tax] . . . , the term "sales" shall exclude dividends received and interest on United States obligations, and for purposes of the tax imposed by Article VI of the Tax Reform Code of 1971 [the capital stock tax], the term "sales" shall include dividends and interest on United States obligations.

The interpretation of the Tax Reform Code is not within the Legislature's power. *See, Philadelphia Appeal,* 383 Pa. 428, 119 A.2d 89 (1956).

included in the sales factor for purposes of the capital stock tax.

In December 1975 the Department adopted a regulation at 61 Pa. Code §153.26(a) providing that "[g]ross receipts in the form of interest on U.S. securities and dividends received shall be excluded from 'sales' ... for sales factor purposes." SmithKline relies heavily upon this regulation, which is extant to this date.

In January 1980, the Director of the Bureau of Corporation Taxes circulated corporation tax memorandum 101 which reversed the prior departmental position by stating that effective for tax years beginning in 1979, dividends and interest from United States obligations shall be excluded from the sales factor for purposes of the capital stock tax. This position, however, was withdrawn by corporation tax memorandum 106 dated February 3, 1981 which stated that dividends and interest from United States obligations shall be included in the sales factor for purposes of the capital stock tax.

Section 408(a) of the Tax Reform Code, 72 P.S. §7408(a) authorizes and empowers the Department "to prescribe, adopt, promulgate, and enforce rules and regulations, not inconsistent with this article, relating to any matter or thing pertaining to the administration and enforcement of the provisions of this article, and the collection of taxes, penalties, and interest imposed" by the corporate net income tax. Section 603, 72 P.S. §7603 incorporates by reference Section 408(a), 72 P.S. §7408(a) and makes it applicable to the capital stock tax.

As has been indicated, SmithKline principally argues that this case is controlled by the Department's regulation found at 61 Pa. Code §153.26(a) mandating the exclusion of interest on United States obligations

and dividends received from the capital stock tax apportionment Sales Factor. The Commonwealth does not dispute that this regulation, if given effect, would require a decision in favor of SmithKline. Neither does the Commonwealth seriously controvert the principle, on which SmithKline places its reliance and which is supported by numerous authorities, that, in the usual case, an administrative agency is no more free to ignore its regulations than are persons sought to be regulated. *Commonwealth v. Harmar Coal Co.,* 452 Pa. 77, 97, 306 A.2d 308, 319 (1973) *appeal dismissed sub nom, Pittsburgh Coal Co. v. Pennsylvania,* 415 U.S. 903 (1974); *Herdelin v. Greenberg,* 16 Pa. Commonwealth Ct. 405, 408, 328 A.2d 552, 554 (1974); *Good v. Wohlgemuth,* 15 Pa. Commonwealth Ct. 524, 528, 327 A.2d 397, 400 (1974).

However, the Commonwealth contends that the regulation is an erroneous statement of the law and must for that reason be disregarded, notwithstanding that it has not been amended or repealed. It is not necessary to decide the correctness, generally, of the Commonwealth's position, which seems to us to invite the very real danger of substantial inequity and prejudice to taxpayers like SmithKline who elect, as is their statutory right, to use a particular tax computational formula and whose election is based on preliminary calculations as to the effect of the methods made available in the Department's regulations. We need not decide this question because the regulation at issue is not infirm.

An agency's interpretation by regulations of a statute which it enforces is entitled to great judicial deference. *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 76, 313 A.2d 156, 169 (1973); *Elkin v. Department of Public Welfare,* 53 Pa. Commonwealth Ct. 554, 559, 419 A.

2d 202, 205 (1979). Where the statutory scheme is technically complex, as in this case, a reviewing Court must be even more chary to substitute its discretion for the expertise of the administrative agency. *Uniontown Area School District*. In this regard, the legislative grant of power to the Department is broad indeed. *See* Section 270(a) of the Act, 72 P.S. §7270(a) ("The department is hereby charged with the enforcement of the provisions of this article, and is hereby authorized and empowered to prescribe, adopt, promulgate and enforce, rules and regulations not inconsistent with the provisions of this article, relating to any matter or thing pertaining to the administration and enforcement of the provisions of this article. . . .").

The Commonwealth responds that the inclusion in the apportionment Sales Factor of interest on United States obligations and dividends received is required by the Pennsylvania Supreme Court's decision in *Koppers* and that, therefore, the regulation is beyond the Department's power to make because it is inconsistent with the governing statute. In analyzing the force of this contention it must first be emphasized that the Court in *Koppers* was concerned with divining the legislative will expressed in the Act of 1935 and, specifically, the operative term "gross receipts" contained therein; while here at issue is the term "sales" within the context of the Tax Reform Code of 1971. While we might otherwise reject out-of-hand the contention that the term "sales" must be held to subsume such sources of income as interest and dividends on the sole ground that the facially more inclusive term "gross receipts" has been so construed, the Commonwealth correctly notes that the statutory definition of "sales" in the Tax Reform Code returns the analytic focus to the meaning of "gross receipts" as follows:

Section 401(3)(2)(a)(1)(E): "Sales" means all gross receipts of the taxpayer not allocated under this definition [with certain exceptions not here pertinent].

Thus, the Commonwealth's position is that the Tax Reform Code definition of "sales" expressly incorporates the construction of "gross receipts" held by the *Koppers* Court to require the inclusion of interest and dividends in the Sales Factor. Hence, the Commonwealth contends, its regulation is wrong. There is considerable force to this position and the question is close. However, for the reasons that follow, we conclude that the interpretation embodied in the Department's regulation is reasonable, not clearly inconsistent with the statute and therefore not to be disregarded by this Court.

First, the definition of "sales" in Tax Reform Code Section 401(3)(2)(a)(1)(E) does not *equate* "sales" and "gross receipts"; rather, it defines "sales" as "gross receipts ... not allocated under this definition." Section 401(3)2.(a)(7) of the Tax Reform Code as originally enacted on March 4, 1971 provided as follows:

(7) Interest and dividends are allocable to this State if the taxpayer's commercial domicile is in this State.

The combination of these provisions, the first, defining sales as inclusive of gross receipts only insofar as they are unallocated and the second, providing that interest and dividends shall be allocable to Pennsylvania if the taxpayer's commercial domicile is here, would compel the conclusion that interest and dividends should be excluded and require a decision here in favor of SmithKline. However, Section 401(3)(2)(a)(7) as amended by Act 105 of September 9, 1971, and as it was during the period here at issue, contained no reference to *dividends* and was as follows:

(7) Interest is allocable to this State if the taxpayer's commercial domicile is in this State. SmithKline contends with detailed reference to other Tax Reform Code provisions also amended by Act 105 that the deletion of the reference to dividends in Section 401(3)(2)(a)(7) is not indicative of an intent that dividends be included in the apportionment Sales Factor but is merely a technical amendment necessitated by the exclusion of nonbusiness income including dividends from the tax base. Thus, says SmithKline, dividends could not be allocated to Pennsylvania because they are not a component of taxable income. In this regard it must be emphasized that the statutory provision at issue in *Koppers* expressly included dividends in the meaning ascribed to "gross receipts." No such direct expression of the legislative will to include dividends is to be found in the Tax Reform Code; instead, the exclusion of interest is manifest and unambiguous and the status of dividends is a matter concerning which the statute is silent and the statutory scheme is susceptible of reasonable dispute.

We turn, therefore, to other indicia of the legislative will including those made relevant by the Statutory Construction Act of 1972, 1 Pa. C.S. §1501 *et seq.* Among the most fundamental of such precepts is that at 1 Pa. C. S. §§1921(6), 1922(3) and 1925, imposing a duty upon the reviewing Court, confronted by a statute which might be construed so as to effect an unconstitutional result, to reject that interpretation in favor of another which will preserve its constitutionality. *Philadelphia Chewing Gum Corp. v. Department of Environmental Services,* 35 Pa. Commonwealth Ct. 443, 387 A.2d 142 (1978) *aff'd in part, dismissed in part,* 489 Pa. 221, 414 A.2d 37 (1980), *appeal dismissed,* 449 U.S. 803 (1980). That is, a serious question as to the constitutionality, when judged by

the supreme law embodied in the Constitution and Laws of the United States, of the inclusion in the apportionment Sales Factor of dividends received or interest on United States obligations, would militate in favor of the Department's regulation and validity of SmithKline's position that such dividends and interest are not to be included.

In its written argument, the Commonwealth cites as "controlling" on this and other related issues the decision of the Appellate Court of the State of Illinois in *Continental Illinois National Bank and Trust Company of Chicago v. Lenckos,* 115 Ill. App. 3d 538, 450 N.E. 2d 844 (1983), *aff'd in part, rev'd in part,* 402 Ill. 2d 210, 464 N.E. 2d 1064 (1984). However, the Supreme Court of Illinois, by decision issued on May 25, 1984, reversed the Appellate Court determination relied on by the Commonwealth and held that an apportionment formula substantially identical to that here at issue could not lawfully include interest income on United States obligations. Specifically, the issue in *Continental Illinois National Bank* was whether such interest income, although excluded from the tax base itself, could be included in the numerator and denominator of the statutory "gross receipts" factor of the multi-state income apportionment formula in effect in Illinois. The Supreme Court of Illinois held that interest income on United States obligations could not be included in the apportionment computations because such inclusion is forbidden by Federal statute as construed by the United States Supreme Court.

During the period here at issue Rev. Stat. §3701, 31 U.S.C. §742 controlled the legality under Federal law of state taxation of interest on United States obligations and provided in pertinent part as follows:[2]

---

[2] These statutory provisions are now codified at 31 U.S.C. §3124-(a).

> All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or Municipal or Local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered directly or indirectly, in the computation of the tax [with certain exceptions not here pertinent].

This prohibition is broad and unambiguous. The United States Supreme Court has held that it is to be literally applied. *American Bank and Trust Company v. Dallas County,* U.S. , 77 L.Ed. 2d 1072 (1983):

> The exemption for federal obligations provided by §3701, as amended in 1959 [adding the second sentence thereof set forth above], is sweeping: with specific exceptions it "extends to *every form* of taxation that would require that either the obligations or the interest thereon, or both, *be considered, directly or indirectly, in the computation* of the tax." (Emphasis in the original.)

*Id.* 77 L.Ed. 2d at page 1078. As indicated, the Supreme Court of Illinois has held these authorities to forbid inclusion of interest on United States obligations in an apportionment factor like that involved in this case. We have been offered neither reason nor authority supportive of a contrary result and we hold that an interpretation of the Tax Reform Code of 1971 so as to include such interest in the sales apportionment factor would raise serious questions as to the legality of the scheme under Federal law. Therefore, we reject such an interpretation in favor of the construction embodied in the Department's regulations which excludes interest on United States obligations as well as dividends received from the apportionment

formula. We also note in this regard that the unambiguous proscription of the use of interest on United States obligations in state tax computational formula appears first in the September 22, 1959 amendment to 31 U.S.C. §742 and does not appear to have been considered by the Pennsylvania Supreme Court in the *Koppers* decision issued in November of that year and concerning the tax year of 1953.

Thus, we are faced with two compelling reasons supporting the reasonableness of the Department's exclusion by regulation of interest on United States obligations: the express allocation of interest income contained in the Tax Reform Code, Section 401(3)(2)-(a)(7) and the difficult questions as to legality of a tax obligation computed with reference to such interest. To be sure, these considerations are not directly applicable to the inclusion in the apportionment formula of dividend income received by SmithKline. However, the Commonwealth has chosen to present in this case an undifferentiated argument as to dividends and interest on United States obligations. That is to say, we have been offered no reason or analysis to support a decision excluding one income item and including the other. Both items have been treated identically and simultaneously in the Department's regulation and, until the recent deletion of dividends from Section 401(3)(2)(a)(7), were treated together in the Tax Reform Code. As we have discussed, SmithKline explains this deletion of reference to dividends as required by the removal of dividends from the tax base and as unrelated to consideration of the place, or not, in the Sales Factor. On this state of the record and the arguments that have been presented to us, we are unable to find the Department's extant regulation so clearly inconsistent with the language of the statute as to permit us, even at the agency's request, to substitute our judgment for that of the agency. Until

repealed, the exclusion by regulation of dividends and interest received on United States obligations from the Sales Factor must bind the Commonwealth as well as its corporate taxpayers and we must, therefore,

Reverse the order of the Board of Finance and Review and enter judgment for the taxpayer.

### ORDER

AND Now, this 11th day of October, 1984, the order of the Board of Finance and Revenue in the above-captioned matter is reversed and judgment is entered for the petitioner SmithKline Beckman Corporation. The record is remanded for further proceedings consistent with this opinion including recomputation of the Capital Stock tax liability of SmithKline Beckman Corporation for the tax year ending December, 1977 without consideration in the sales apportionment factor of dividends received or interest on United States obligations.

For provision concerning exceptions see Pa. R.A.P. No. 1571(i).