601 A.2d 893

**PHILADELPHIA SUBURBAN CORPORATION, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1991.

Decided Jan. 3, 1992.

412

Harry J. Rubin, for petitioner.

John J. Butchar, Deputy Atty. Gen., for respondent.

Before COLINS and BYER, JJ., and NARICK, Senior Judge.

BYER, Judge.

The sole issue in this taxpayer appeal from the Board of Finance and Revenue is the proper determination of the "average net income" component of the fixed formula used to compute taxpayer's capital stock value for capital stock tax purposes. Resolution of this issue requires us to determine the validity of a regulation of the Department of Revenue, 61 Pa.Code § 155.26(b), which interprets section 601 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7601.

Section 601 contains the statutory formula for computing the capital stock value of a corporation incorporated under the laws of the Commonwealth. "Capital stock value" is defined by section 601 as follows:

> The amount computed pursuant to the following formula: the product of one-half times the sum of the average

net income capitalized at the rate of nine and one-half per cent plus seventy-five percent of net worth, from which product shall be subtracted one hundred thousand dollars ($100,000), the algebraic equivalent of which is

$$(.5 \times (\text{average net income}/.095 + (.75)$$
$$(\text{net worth})))—\$100,000$$

72 P.S. § 7601.

"Average net income," one of the two variables in the "capital stock value" formula, is defined by section 601 as follows:

The sum of the net income or loss for each of the current and immediately preceding four years, divided by five.... In computing average net income, losses shall be entered as computed, but in no case shall average net income be less than zero. The *net income* or loss of the entity *for any taxable year shall be the amount set forth as income per books on the income tax return filed by the entity with the Federal government for such taxable year,* or if no such return is made, as would have been set forth had such a return been made, subject, however, in either case to any correction thereof, for fraud, evasion or error. *In the case of any entity which has an investment in another corporation, the net income or loss shall be computed on an unconsolidated basis exclusive of the net income or loss of such other corporation.*

72 P.S. § 7601. (emphasis added).

In January 1987, the Department of Revenue promulgated a regulation, 65 Pa.Code § 155.26, which interprets and expands upon the statutory definition of "average net income" under section 601 as amended by Act 1983–89. The regulation provides in part:

### Average net income—fixed formula.

(a) Average net income is the sum of the taxpayer's net income or loss for each of the current and immediately preceding 4 years, divided by five.

(b) *Net income* or loss *is the amount set forth as income per books on the income tax return filed by the taxpayer with the Federal government,* or if no return is made, as would have been set forth had the return been made. The net income or loss shall be computed on an unconsolidated basis exclusive of the net income or loss of an investee corporation and exclusive of the net income or loss of an investee corporation accounted for under the equity method of accounting. *The amount set forth as income per books on the income tax return filed with the Federal government* or as would have been set forth had the return been made, *shall be adjusted to include dividends from investments accounted for under the consolidated or equity methods of accounting.*

61 Pa.Code § 155.26(a) and (b) (emphasis added).

Counsel for taxpayer and the Commonwealth filed a stipulation of facts setting forth the factual and procedural background of this case, which we adopt as our findings.[1] This stipulation of facts discloses the following.

Taxpayer, a Pennsylvania corporation, filed its Pennsylvania capital stock tax return for the year ended December 31, 1985, reporting a capital stock value of $28,189,030.00, on which taxpayer calculated a tax of $14,331.00 (Stipulation, 2). By settlement mailed to taxpayer on March 22, 1988, the Department of Revenue re-computed taxpayer's capital stock tax for 1985 on a "capital stock value" of $55,987,277.00, calculating its 1985 capital stock tax at $29,987.00 (Stipulation, 3).

**1.** The Pennsylvania Rules of Appellate Procedure govern judicial review of determinations of the Board of Finance and Revenue. Pa. R.A.P. 1571. Rule 1571(f) provides that no record shall be certified to the court by the Board of Finance and Revenue and that the parties shall prepare and file a stipulation of facts as may be agreed to and identify the issues of fact which remain to be tried. Appeals from the board are considered *de novo* based upon the stipulation of facts, which constitutes the entire record for purposes of appeal if no issues of fact remain outside the stipulation. *See Doyle Equipment Co. v. Commonwealth,* 117 Pa.Commonwealth Ct. 38, 40 n. 2, 542 A.2d 644, 645 n. 2 (1988). The burden of proof is on the taxpayer. *Id.,* (citing section 236 of the Tax Reform Code, 72 P.S. § 7236).

Taxpayer filed a petition for resettlement with the Board of Appeals, which was refused. Taxpayer then filed a petition for review with the Board of Finance and Revenue. This petition was also refused, and taxpayer appealed to this court (Stipulation, 4–6).

Taxpayer's position is that its "average net income" is a negative $687,597.00 and therefore the "average net income" component of the "capital stock value" formula is zero. Taxpayer computed its "average net income" by using the amounts set forth as "net income per books" as set forth on Schedule M–1 of its federal income tax return filed with the Department of Revenue for tax year 1985 and the four prior tax years (Stipulation, 8).

The Commonwealth's position is that taxpayer's "average net income" component is $5,851,667.00. The Commonwealth computed this "average net income" by "adjusting" taxpayer's "net income per books" for tax year 1985 and the prior four years by the amount of dividends received by taxpayer from its subsidiary corporations, including dividends received from Philadelphia Suburban Water Company (Water Company), a wholly-owned Pennsylvania subsidiary (Stipulation, 9).

The parties further stipulated as follows:

10. In 1985, for example, Taxpayer received a dividend from ... Water Company in the amount of $8,000,000. Taxpayer included this amount as dividend income in computing its federal taxable income before special deductions (line 28 of the federal return) on a separate company basis for Pennsylvania corporate net income tax purposes, but Taxpayer for accounting purposes does not include dividends from subsidiaries as book income on its books of account and consistent therewith did not include this amount in income per books on line 1 of Schedule M–1 of its separate company federal return in computing its average net income on a separate company basis for Pennsylvania capital stock tax purposes....

11. ...Water Company, Taxpayers' wholly-owned subsidiary ... conducts all of its business in Pennsylvania.

Its federal taxable income for 1985, computed on a separate company basis for Pennsylvania corporate net income tax purposes, was $11,765,653. Its net income per books for 1985, computed on a separate company basis, was $10,031,720. Therefore, the $8,000,000 dividend amount paid by it to Taxpayer (A) was included in the Pennsylvania taxable income of ... Water Company in computing its Pennsylvania corporate net income tax for 1985 and (B) was included in the 1985 book net income of ... Water Company in computing its capital stock value and, hence, its capital stock tax for 1985....

12. Taxpayer and its subsidiaries filed a consolidated federal income tax return with the Federal Government for the year ended December 31, 1985. For Pennsylvania tax purposes, however, Taxpayer was required to prepare and file and did prepare and file a report on an unconsolidated separate company basis.

13. In preparing its separate company federal income tax return for the year ended December 31, 1985, Taxpayer reported its net income per books at $187,799 and its income subject to tax but *not* recorded on books at $8,000,000 (see attached Exhibit "A", federal form 1120, page 4, schedule M–1). A copy of the actual combined schedule M–1 filed by Taxpayer with its consolidated federal income tax return for the year ended December 31, 1985, marked Exhibit "E", is attached hereto and made a part hereof. The actual combined schedules M–1 filed by Taxpayer with its consolidated federal income tax returns for the years ended December 31, 1981, 1982, 1983 and 1984 were prepared in a similar fashion.

The parties agree that if taxpayer is correct, its appeal should be sustained and judgment entered in favor of the Commonwealth resettling taxpayer's capital stock tax for the year ended December 31, 1985 in the amount of $14,-331.00 (Stipulation, 14). If the Commonwealth is correct, the capital stock tax for 1985 was correctly computed as settled, taxpayer's appeal should be dismissed and judg-

ment directed in favor of the Commonwealth in the amount of $29,987.00 (Stipulation, 15).

Taxpayer argues that the definition of "average net income" in section 601 as amended by Act 1983–89 means exactly what it says, that "the net income or loss of the entity for any taxable year *shall be the amount set forth as income per books on the income tax return filed* by the entity *with the Federal government* for such taxable year...." 72 P.S. § 7601. The amount actually set forth by taxpayer as "income per books" on its federal income tax reports did not include any dividends received from its subsidiary corporations. Taxpayer contends that the General Assembly deliberately chose the "income per books" language and that this language is in keeping with sound accounting principles.

The Commonwealth relies on the regulation promulgated by the Department of Revenue, which expands the statutory definitions of "net income" and "average net income" as follows:

> Net income or loss is the amount set forth as income per books on the income tax return filed by the taxpayer with the Federal government.... *The amount set forth as income per books on the income tax return filed with the Federal government ... shall be adjusted to include dividends received from investee corporations,* including dividends from investments accounted for under the consolidated or equity methods of accounting.

61 Pa.Code § 155.25(b) (emphasis added).

The Commonwealth argues that this regulation "simply clarifies the means to achieve the statutory mandate that the net income of an entity with an investment in another entity be computed on an unconsolidated basis," and "explains what adjustments must be made to federal book income" of an equity method taxpayer to achieve this legislative purpose. Brief for respondent, 5. Thus the Commonwealth contends that section 155.25(b) of the department's regulations is "consistent with and complimentary to the governing statutory provision." *Id.*

We agree with taxpayer that section 155.26(b) of the department's regulations substantially alters, and therefore is inconsistent with, its statutory counterpart, section 601 of the Tax Reform Code of 1971, as amended by Act 1983–89. 72 P.S. § 7601. We declare that regulation invalid because it is in derogation of the unambiguous statutory definition of "average net income."

 The object of all interpretation of statutes is to ascertain and effectuate the intent of the General Assembly, construing the statute if possible to give effect to all of its provisions. Statutory Construction Act, 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

 Where the language of a statute is explicit, "it has been a long standing principle ... not to disturb the plain meaning of that language by resorting to the rules of statutory construction." *Philadelphia Housing Auth. v. Commonwealth of Pennsylvania Labor Relations Board,* 508 Pa. 576, 582, 499 A.2d 294, 297 (1985) (collecting cases); *Latella v. Unemployment Compensation Board of Review,* 74 Pa.Commonwealth Ct. 14, 29–30, 459 A.2d 464, 473 (1983). Where the statute is unclear and its words are not explicit, then and *only* then "may a court embark upon the task of ascertaining the intent of the legislature by reviewing the necessity of the act, the object to be obtained, circumstances under which it was enacted and the mischief to be remedied," and other considerations guiding judicial review of statutes in the attempt to identify the legislative intent. *Coretsky v. Board of Commissioners,* 520 Pa. 513, 517–18, 555 A.2d 72, 74 (1989); 1 Pa.C.S. § 1921(c)(1–8).

 We presume the General Assembly did not intend a result which is absurd or unreasonable, and words and phrases used in a statute are construed according to their common meaning and accepted usage, although technical words and phrases are construed according to their peculiar

and appropriate meaning or definition. *Doyle Equipment Co. v. Commonwealth*, 117 Pa.Commonwealth Ct. 38, 42, 542 A.2d 644, 645–46 (1988); 1 Pa.C.S. §§ 1903, 1922(1). We also presume that the General Assembly intends the entire statute to be effective and certain. *Doyle Equipment* at 42, 542 A.2d at 646; 1 Pa.C.S. § 1922(2). Provisions of statutes imposing taxes are strictly construed. 1 Pa.C.S. § 1928(b).

■■■■ Regulations of a Commonwealth agency interpreting provisions of its enabling legislation are entitled to substantial deference by the courts, and the agency's interpretation should be disregarded or overturned only for cogent reasons or where clearly erroneous. *Commonwealth, Liquor Control Board v. Burrell Food Systems*, 97 Pa.Commonwealth Ct. 101, 104, 508 A.2d 1308, 1309, *appeal denied* 513 Pa. 636, 520 A.2d 1386 (1986); *Mormak v. Unemployment Compensation Board of Review*, 135 Pa.Commonwealth Ct. 232, 237–38, 579 A.2d 1383, 1386 (1990). Where a statutory scheme is technically complex, as is the Tax Reform Code, "a reviewing Court must be even more chary to substitute its discretion for the expertise of the administrative agency." *SmithKline Beckman Corp. v. Commonwealth*, 85 Pa.Commonwealth Ct. 437, 458, 482 A.2d 1344, 1353 (1984) (citation omitted). Therefore, Department of Revenue regulations interpreting the Tax Reform Code will not be disregarded by this court unless clearly inconsistent with the code. *Id.*, 85 Pa.Commonwealth Ct. at 457–58, 482 A.2d at 1354, 1356.

■■■ The statutory definition of "average net income" is straightforward. Net income or loss of an entity for any taxable year being averaged *"shall be the amount set forth as income per books"* on the federal income tax return filed for such taxable year. 72 Pa.C.S. § 7601 (emphasis added). Taxpayer's net "income per books" as actually computed on schedule M–1 of its separate company federal income tax return for 1991–1985 did not include the amount of dividends received by taxpayer from its wholly-owned Pennsylvania subsidiaries (Stipulation, 8, 9 and Exhibit E).

In 1985, taxpayer received an $8,000,000.00 dividend from Water Company which was included as dividend income for purposes of computing taxpayer's federal taxable income. However, for accounting purposes under the equity method, the $8,000,000.00 was not included as "income per books" on schedule M–1 of taxpayer's separate company federal income tax return in computing its average net income (Stipulation, 10). Taxpayer's 1985 federal net "income per books" taxable income was $187,799.00 and its income subject to tax but not recorded as book income was $8,000,-000.00 (Stipulation, 13 and Exhibit A). There is no doubt that taxpayer's "income per books" did not include the dividends received from its subsidiaries, although amounts distributed to taxpayer as dividends from its wholly-owned subsidiaries were included in computing the Pennsylvania corporate net income tax of the subsidiaries and were included in their book net income in computing their capital stock value and capital stock tax (Stipulation, 11).

 The definition of "average net income" in section 601 of the code is not ambiguous, its words are explicit, and no ambiguity is created in its application. Nevertheless, the Commonwealth would have us ignore this plain language and accept the Department of Revenue's regulation interpreting section 601 as *merely* a "clarification" or "explanation" of the statutory language. We reject this argument, because to accept it would be to legislate, not interpret.

 Legislative intent is the paramount concern in the construction of statutes, but where that intent is expressed explicitly, the judicial task ordinarily is at an end.[2] As Justice Frankfurter stated:

2. This prohibition against disregarding the letter of the law in pursuit of its spirit is subject to a narrow exception. "When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances ... We do not believe that this is one of those rare cases where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters.'" *Demarest v. Manspeaker,* —— U.S. ——, ——, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) (citations omitted).

The function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy had lodged in its elected legislature.... *A judge must not rewrite a statute, neither to enlarge or contract it....* [The judge] must not read in by way of creation. [The judge] must not read out except to avoid patent nonsense or internal contradiction.

Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 533 (1947) (emphasis added).

The Commonwealth asserts that the department's regulation is necessary to achieve the legislative mandate which requires Pennsylvania corporations to compute their net income on an unconsolidated, separate company basis and that, to accomplish this purpose, it is necessary to "adjust" the "amount set forth as income per books" on the federal income tax consolidated returns actually filed by investor corporations which use the equity method of accounting.

■■■ There are two principal methods of accounting for dividend income paid to an investor corporation: the "cost method," which recognizes dividends paid to the investor corporation as income when distributed by the investee corporation; and the "equity method," which treats dividends received from an investee corporation (subsidiary) that is controlled by the investor corporation (parent) as a return of capital, reducing the carrying amount of the investment, not as income.[3] Using the equity method, an

3. An explanation of the cost and equity methods of accounting for dividends paid to an investor corporation by an investee is set forth in Seider and Carmichael, *Accountant's Handbook,* section 30 at 30.27–30.28 (Vol. 2, 6th ed., John Wiley & Sons), as follows:

**COST METHOD VERSUS EQUITY METHOD**

The two principal methods of accounting by an investor (a business entity that holds an investment in voting stock of another company) are the cost method and the equity method. The basic difference between the methods relates to the timing of recognizing the investor's share in the earnings of the investee (a corporation that issued the voting stock held by an investor). While investor's share in investee's earnings is recognized with no delay under the equity method, accounting under the cost method requires the investor to delay recognition until the investee distributes the earnings in the

investor corporation recognizes its share of its investee's earnings in the period in which they are reported in its financial statements, rather than the period in which the investee declares dividends. Under the "cost method," dividend income will be treated as "income per books" to the investor corporation; under the "equity method," such income will not.

According to the Commonwealth, the only way for an investor corporation *truly* to account for dividend income received from an investee corporation on "an unconsolidated basis exclusive of the net income or loss of" the investee as provided in section 601 is by the "cost method." Therefore, the Commonwealth considers it necessary to "adjust"

form of cash dividends. The methods are described in [Accounting Principles Board] Opinion No. 18 [effective December 31, 1971], "Equity Method for Investment in Common Stock" (paragraph 6), as follows:

**The cost method.** An investor records an investment in the stock of an investee at cost, and recognizes as income dividends received that are distributed from net accumulated earnings of the investee since the date of acquisition by the investor. The net accumulated earnings of an investee subsequent to the date of investment are recognized by the investor only to the extent distributed by the investee as dividends. Dividends received in excess of earnings subsequent to the date of investment are considered a return of investment and are recorded as reductions of cost of the investment.

**The equity method.** An investor initially records an investment in the stock of an investee at cost, and adjusts the carrying amount of the investment to recognize the investor's share of the earnings or losses of the investee after the date of acquisition. The amount of the adjustment is included in the determination of net income by the investor, and such amount reflects adjustments similar to those made in preparing consolidated statements including adjustments to eliminate intercompany gains and losses, and to amortize, if appropriate, any difference between investor cost and underlying equity in net assets of the investee at the date of investment. The investment of an investor is also adjusted to reflect the investor's share of changes in the investee's capital. Dividends received from an investee reduce the carrying amount of the investment.

The equity method of accounting for dividend income is to be used to account for investments made in controlled subsidiaries such as a corporation where more than 50% of its voting stock is owned by the investor. *Id.* at section 30, 30.26. Taxpayer in this case owns 100% of Water Company's voting stock, and therefore is required by generally accepted accounting principles to use the equity method to account for dividends received from the wholly-owned subsidiary.

the amount set forth by an "equity method" corporation as "income per books" on its actual federal income tax returns. The "adjustment" is the inclusion of dividends received from the investee even though not actually included in the federal tax return as "income per books." The Commonwealth claims that any other interpretation would be unfair, absurd and unreasonable. We disagree.

To the contrary, the Commonwealth is being unreasonable in its insistence that this court ignore the explicit language of the code which mandates inclusion *only* of the "income per books" actually set forth on the investor's federal income tax return without inclusion of dividend income (or any other "adjustments") not actually reported as "income per books." This statutory definition of "average net income" fully comports with sound and generally accepted accounting principles. *See* note 3.

We must presume that the General Assembly was aware of these generally accepted accounting principles, and the differences between the equity and cost methods of accounting, in 1983 when it defined "net income" as "the amount set forth as income per books on the income tax return filed ... with the federal government." 72 P.S. § 7601. "Income per books" or "book income" appears on taxpayer's federal returns only in its schedule M–1 which, following accepted accounting principles, *does not include dividends* received from its controlled subsidiaries. The term "income per books" must be construed according to its technical and peculiar meaning in the accounting world, 1 Pa.C.S. § 1903(a), and so construed, does not encompass such dividends as book income in consolidated tax returns filed with the federal government.

If the General Assembly believed that "income per books" on a consolidated federal tax return should be "adjusted" by the addition of dividend income not actually included as "income per books," in order to fulfill an intent that net income of investor corporations be computed on an unconsolidated basis, we believe it would have done so. The Commonwealth Court "is not free to engraft additional

verbiage in an effort to pursue the ... spirit" of a statute. *McNelly Appeal,* 122 Pa.Commonwealth Ct. 601, 607, 553 A.2d 472, 475 (1989), (citing *Black v. Billy Penn Corp.,* 72 Pa.Commonwealth Ct. 628, 632, 457 A.2d 192, 193 (1983) (additional citation omitted)). Similarly, our Supreme Court has recently stated in *In re J.S.,* 526 Pa. 418, 426, 586 A.2d 909, 913 (1991), that it "is not our stead to engraft upon legislation provisions which the General Assembly did not consider or did not see fit to enact. *See Commonwealth v. Revtai,* 516 Pa. 53, 532 A.2d 1 (1987)."

To accept the Department of Revenue's "adjustment" by interpretive regulation would be to ignore the legislature's explicit language and, in effect, to delete the legislature's mandate to compute net income with reference to the "income per books" actually set forth on the investor's federal tax return. We must strictly construe section 601 of the code and must presume the *entire* definition of "average net worth" was meant to be effective. 1 Pa.C.S. §§ 1922(2) and 1921(a). Because the regulation, 61 Pa.Code § 155.26, is clearly inconsistent with the statutory definition of "average net worth," 72 P.S. § 7601, it is in derogation of the code and at odds with the legislative intent, and therefore is declared invalid to the extent it "adjusts" the "income per books" of a taxpayer using the equity method to account for dividends received from investee corporations.

We also reject the Commonwealth's contention that in this case we must defer to the Department of Revenue's regulation interpreting a statute which it enforces, given the department's expertise in this technically complex statutory taxation scheme. Although we readily accept this principle, obviously we are not required or permitted to sit idly by where an agency's regulation is demonstrably inconsistent with the unambiguous language of the statute. Tax Reform Code, §§ 408(a) and 603, 72 P.S. §§ 7408(a) and 7603.[4] *See, e.g., SmithKline Beckman Corp.,* 85 Pa.Com-

4. Sections 408(a) and 603 provide that the department is "authorized and empowered to ... adopt [and] promulgate ... rules and regulations, not inconsistent with" the statutory provisions regarding the

monwealth Ct. at 459, 482 A.2d at 1353–54; *Doyle Equipment Co.; Commonwealth v. Equitable Gas Co.,* 85 Pa.Commonwealth Ct. 577, 584, 483 A.2d 1021, 1024 (1984). *See also Paris Manufacturing Co., Inc. v. Commonwealth,* 505 Pa. 15, 20, 476 A.2d 890, 893 (1984). Deferring to an agency's expertise does not require the abdication of our responsibility or the forfeiture of a taxpayer's right to judicial review.

 The Commonwealth argues that the Department of Revenue's "clarification" of the code by regulation is necessary to avoid an unconstitutional construction of Section 601. The Pennsylvania Constitution provides:

**Uniformity of taxation**

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

Pa. Const., Art. VIII, § 1.

Without the "clarification" that "income per books" be adjusted to include dividends received by an investor corporation using the equity method of accounting, the Commonwealth contends that a non-uniform and unconstitutional classification will be created whereby similarly situated taxpayers are treated differently based upon their method of accounting for dividend income.

The Commonwealth's uniform taxation argument does not survive the threshold question of whether the code's definition of "average net worth" in fact creates *any* classifications, let alone non-uniform ones. *See Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 83, 515 A.2d 1358, 1363 (1986). The code treats all taxpayers alike; each corporation must use the amount set forth as "income per books" on its federal income tax returns. Each corporation is free to use an accounting method of choice. Those investor corporations using the cost method will include

capital stock tax. *See SmithKline Beckman Corp.,* 85 Pa.Commonwealth Ct. at 456, 482 A.2d at 1353.

dividend income received from controlled subsidiaries in its "income per books" in its federal tax returns. Those using the equity method will not.

Any classification here is created by the voluntary choice of each corporation and is not compelled by the code. There are many tax-related and other consequences of choosing one accounting method over another, and the code leaves that choice entirely to the taxpayer. Section 601 of the Tax Reform Code of 1971, as amended by Act 1983–89, imposes the capital stock tax uniformly and does not create classifications of similarly situated taxpayers. Therefore, our construction of section 601 does not violate the principle of uniform taxation upon the same class of subjects.

For the foregoing reasons, we reverse the decision of the Board of Finance and Revenue.

## ORDER OF COURT

We reverse the decision of the Board of Finance and Revenue and direct the chief clerk to enter judgment in favor of the Commonwealth in the amount of $14,331.00. We further direct the Department of Revenue to credit Philadelphia Suburban Corporation in the amount of $15,656.00 plus appropriate interest. In accordance with paragraph 14 of the stipulation, the prothonotary is directed to mark this judgment satisfied unless exceptions are filed within thirty days of entry of this order in accordance with Pa.R.A.P. 1571(i).