567 A.2d 789

**Cindy M. NEIFERT, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA STATE HORSE RACING COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1989.

Decided Dec. 20, 1989.

James L. McAvery, with him, Michael J. McGovern, Law Offices of Gary M. Lightman, Harrisburg, for petitioner.

Randall N. Sears, Harrisburg, for respondent.

Norman I. White, with him, William G. Prins, McNees, Wallace & Nurick, Harrisburg, for intervenor.

Before COLINS, PALLADINO and SMITH, JJ.

COLINS, Judge.

Cindy M. Neifert (petitioner) petitions for review from an order of the Pennsylvania State Horse Racing Commission (Commission) which ruled that petitioner was not entitled to $9,648.80 for a winning twin trifecta ticket purchased from Mountain Thoroughbred Racing Association (intervenor) at Penn National Race Course.[1] We affirm.

Petitioner has been employed as a pari-mutuel clerk at Penn National for over 11 years. On December 18, 1988, petitioner was working the twin trifecta window. The twin

1. Mountain Thoroughbred Racing Association runs the racing program at Penn National Race Course.

trifecta ticket is a form of wagering in which a bettor selects the three horses that will finish first, second, and third in each of two designated consecutive races in the exact order as officially posted. A patron approached petitioner's betting window and presented a winning ticket from the first-half of the twin trifecta. In order to be eligible to then pick the horses for the second half of the twin trifecta, the bettor must surrender the winning ticket for the monetary value established by the pari-mutuel wagering and a voucher which allows the bettor to choose his entries for the second half of the twin trifecta.

The patron was issued his winnings and an exchange voucher. Petitioner then waited on another patron. After this, the original patron returned to exchange his voucher for a live ticket for the second race of the twin trifecta. While waiting on the next bettor, petitioner realized her pari-mutuel machine was not operating properly. Petitioner, instead of having issued the patron a live ticket for the second half of the twin trifecta, had issued him a straight trifecta bet. Petitioner then issued a ticket on the voucher using the patron's numbers, paid for the straight ticket, and informed her fellow employees that if this patron returned, she was holding his ticket.

Nobody with a live ticket picked the order of finish for the second half of the twin trifecta. Nevertheless, this was the last day of the racing meet at Penn National and the Rules of Racing require a winner. Thus, the 12 individuals who picked the correct order of finish of the first two horses in the second half of the twin trifecta were entitled to $9,648.80 each.

The patron never returned to petitioner's window, so petitioner contacted the pari-mutuel office to inform them of the situation. A review of the computer records in the pari-mutuel office confirmed that petitioner had issued the wrong ticket. Petitioner requested to search the grandstand for the patron but was told to return to her window. Petitioner turned the winning ticket over to her manager and was issued a receipt.

On February 1, 1989, petitioner registered a complaint with the Commission seeking the proceeds of the winning ticket. The Commission instructed the intervenor to retain the funds until a final determination was made. After an April 11, 1989, hearing, the Commission, on May 17, 1989, denied petitioner's request for the winnings and directed that the money be forwarded to the Department of Revenue. This appeal followed.

■ Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence. *Goldstein v. State Horse Racing Commission*, 125 Pa.Commonwealth Ct. 695, 557 A.2d 1183 (1989). The petitioner argues that the Commission erred as a matter of law in ruling that she had not presented a winning pari-mutuel ticket for payment. By purchasing the ticket for the patron, petitioner argues that she had created a purchase money trust with the patron being the equitable owner of the ticket and her being the legal owner. When the patron failed to claim the ticket, petitioner argues she became the owner of the ticket. To support this argument, petitioner relies on *Masgai v. Masgai*, 460 Pa. 453, 333 A.2d 861 (1975), in which our Supreme Court stated "[w]here a transfer of property is made to one person and the purchase price is paid by another a resulting trust arises in favor of the person by whom the purchase price is paid." *Id.*, 460 Pa. at 458, 333 A.2d at 864 (*quoting* Restatement (Second) of Trusts § 440 (1959)). The petitioner also argues that she has created such a trust because her intention as payor was to hold the ticket for the unknown patron. *See Mermon v. Mermon*, 257 Pa.Superior Ct. 228, 390 A.2d 796 (1978).

The Commission maintains that the petitioner did not create a valid trust because she failed to satisfy the requirements of a valid trust insofar as she was both the payor and the person to whom the property was transferred. The Commission further maintains that under the twin trifecta wagering rules, petitioner is not entitled to the winnings.

The following twin trifecta rules are pertinent to the disposition of this issue:

A.01.  The Twin Trifecta is a form of pari-mutuel wagering in which the *bettor* selects the three runners that will finish 1st, 2nd and 3rd in each of the two designated races in the exact order as officially posted.

.      .      .      .      .

A.10.  After the official declaration of the first three runners to finish in the first race of the Twin Trifecta, each *bettor* holding a winning ticket must, prior to the running of the second Twin Trifecta race, exchange such winning ticket for both the monetary value established by the mutuel's department and a Twin Trifecta exchange ticket at any window and at such time shall select the three runners to finish in the second race of the Twin Trifecta in exact order as officially posted.  *No further money shall be requested of the holders of the winning ticket in order to make the exchange.*

.      .      .      .      .

A.16.  Sales of the Twin Trifecta tickets other than from *pari-mutuel machines or from an individual to another* shall be deemed illegal and prohibited.

(Emphasis added.)

The Commission argues that the petitioner was not the bettor under Rule A.01 because she did not select the winners in both races but only the second race.  Furthermore, under Rule A.10, petitioner was not a bettor holding a winning ticket and the Commission did not purchase her ticket from a pari-mutuel which is in violation of Rule A.16.

▮▮▮  An agency's interpretation of its own regulations is entitled to great weight unless clearly erroneous.  *Toney v. Department of Public Welfare,* 127 Pa.Commonwealth Ct. 162, 561 A.2d 75 (1989).  Under the clear and unambiguous language of the twin trifecta rules, we agree that the petitioner is not entitled to the winnings because she was neither a purchaser nor a bettor.

Petitioner next argues that she is not prohibited from betting on races and that the Commission's decision results in the winnings escheating to the State and any doubt as to whether the property escheats should be resolved against the Commonwealth. While pari-mutuel clerks are not prohibited from betting on races,[2] petitioner was not the bettor in this case and has not established a valid claim to the winnings.

The intervenor urges the Court that to award the winnings to petitioner would be contrary to the Act's purpose of fostering an image of horse racing that makes the image of the industry irreproachable in the eyes of the skeptical public. *Kulick v. State Harness Racing Commission*, 115 Pa.Commonwealth Ct. 408, 540 A.2d 620 (1988); *Helad Farms v. State Harness Racing Commission*, 79 Pa.Commonwealth Ct. 314, 470 A.2d 181 (1984). The intervenor is not concerned with paying the $9,648.80 because they are not entitled to the money. It is either granted to the petitioner or the Department of Revenue under Section 202(b)(3) of the Act.[3] The intervenor is, however, concerned about maintaining the highest standard of integrity for the industry. The intervenor suggests that the petitioner's conduct was less than innocent when she issued the ticket in question, because the pari-mutuel machines are programmed to alert a clerk that they have made a mistake on a twin trifecta voucher and the petitioner disregarded these warnings. If the petitioner is allowed to profit by this "mistake," it will result in petitioner's gaining $9,648.80 that should have gone to a paying patron of the intervenor, petitioner's employer. Such a result would clearly not be in the best interests of racing, as it would establish a precedent that would make it possible for others similarly situated to benefit from their errors. Such conduct would clearly not be in the best interests of racing, as well as

2. Section 228 of the Race Horse Industry Reform Act (Act), Act of December 17, 1981, P.L. 435, *as amended,* 4 P.S. § 325.228.

3. 4 P.S. § 325.202(b)(3).

being inimical to the employer's best interests in such situations.

The ticket that petitioner purchased was a straight trifecta bet on the fifth race which she issued to the patron. She used patron's free ticket voucher for a live ticket on the second half of the twin trifecta. Therefore, since the petitioner neither purchased the ticket nor was a bettor as contemplated by the twin trifecta rules, we affirm the order of the Commission.

Accordingly, the order of the Commission is affirmed.

### ORDER

AND NOW, this 20th day of December, 1989, the order of the Pennsylvania State Horse Racing Commission in the above-captioned matter is affirmed.