598 A.2d 1344

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,**

v.

**DEPARTMENT OF INSURANCE, Constance B. Foster, Insurance Commissioner, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 2, 1991.

Decided Oct. 23, 1991.

Reargument Denied Dec. 20, 1991.

Robert E. Kelly, Jr., for petitioner.

Terrance A. Keating, Asst. Counsel, for respondents.

Ralph C. Warman, for intervenor.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

State Farm Mutual Automobile Insurance Company (State Farm) appeals from an order of the Insurance Commissioner determining that State Farm violated the Act of June 5, 1968, P.L. 140, *as amended,* 40 P.S. §§ 1008.1— 1008.11 (Act 78) and Section 6310.4 of the Crimes Code, 18 Pa.C.S. 6310.4 (Act 31). The issue is whether a conviction for underage drinking is grounds for cancelling an automobile insurance binder and refusing to write an insurance policy.

The facts are not in dispute. Michael Scott Henry (Henry) was convicted of underage drinking as defined in Section 6308 of the Crimes Code, 18 Pa.C.S. § 6308. He was not operating a vehicle at the time of the offense. However, as a result of this conviction, Henry's driver's license was suspended for ninety days as required by Act 31. Shortly after the license suspension ended on January 26, 1989, Henry applied for automobile insurance through a State Farm agent who assisted Henry with the application forms for the insurance. Henry indicated that his license had been suspended as a result of the conviction for underage drinking. The State Farm agent then issued a binder providing insurance coverage to Henry who paid the required $155 payment.

State Farm notified Henry within sixty days by form entitled "Notice of Cancellation" that his insurance coverage would terminate because of the underage drinking conviction and resulting license suspension. State Farm returned a refund check of $64.61 to Henry for the unused portion of coverage that had been paid for when the binder was issued. State Farm's contention is that its cancellation of the insurance coverage provided by the binder issued to Henry is a refusal to write as described in the Insurance Department's (Department) regulations and not a prohibited cancellation of a policy under Act 78 which precludes an insurer from either cancelling, refusing to write or to renew a policy for specifically enumerated reasons not applicable here.

State Farm relies on the Department's regulations set forth in 31 Pa.Code § 61.10(c), commenting on the language of Act 78:

The 60–day period referred to in section 6(3) ... is intended to provide to insurers a reasonable period of time, if desired, to investigate thoroughly a particular risk while extending coverage during the period of investigation. Should an insurer, after the investigation, conclude that it does not wish to remain on the risk, it may cancel the policy, provided that it is not in violation of

section 3 of the act.... However, for purposes of review by the Department in order to determine whether the action by the insurer is in violation of section 3 of the act ... the cancelation shall be considered to be a refusal to write. Therefore, an individual who has been cancelled by an insurer during the 60-day period may obtain from the insurer the reasons for the action of the insurer and may request a review by the Insurance Department.

State Farm contends that it has not violated Act 78 since its actions were taken within sixty days of issuance of the binder, and in support of this contention, further relies on the language of Section 8.6(3) of the Act which states in pertinent part:

Nothing in this act shall apply:

. . . .

(3) To any policy of automobile insurance which has been in effect less than sixty days, unless it is a renewal policy, ... except that if an insurer cancels a policy of automobile insurance in the first sixty days, the insurer shall supply the insured with a written statement of the reason for cancellation.

The Department argues that the penalty for Henry's conviction for underage drinking under Section 6308 of the Crimes Code is limited to a ninety-day suspension of his driver's license as provided for in Section 6310.4(a), (b) and that Section 6310(d) prohibits Henry's conviction from forming the basis for State Farm's cancellation of the binder and failure to issue subsequent insurance coverage. Section 6310.4(d) provides:

(d) **Insurance Premiums.**—An insurer shall not increase premiums, impose any surcharge or rate penalty, or make any driver record point assignment for automobile insurance, nor shall an insurer cancel or refuse to renew an automobile insurance policy on account of a suspension under this section.

In question are the categories of insureds who are protected from possible penalties imposed by insurance companies as a result of convictions for underage drinking. State

Farm argues that protection under Act 31 is limited to existing and not new policy holders. Thus, the insurer is only precluded from either cancelling or failing to renew the insureds automobile insurance. State Farm further maintains that its cancellation of an insurance binder is neither a cancellation nor a refusal to renew as described by Act 31. Rather, its action is a failure to write as defined by the Department's regulations commenting on the requirements of Act 78.

State Farm reasons that since Act 78 distinguishes between cancellations and refusals to renew in Section 1008.8(a) and refusals to write in Section 1008.8(b), the language in Act 31, which only refers to cancellations and refusals to renew, is not applicable to a refusal to write. Relying on the doctrine of *expressio unis est exclusio alterius*, State Farm contends that since Act 31 addresses only the underwriting activities of cancellation and failure to renew, it must have excluded the refusal to write activity from coverage. According to the Department, however, Act 31, unlike Act 78, makes no distinction between cancellations before or after sixty days. Act 31's blanket prohibition against cancellation necessarily includes precluding cancellation within sixty days. Thus, the legislature's failure to exempt cancellations within sixty days from Act 31, unlike Act 78, must be presumed intentional.

 Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b), states that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Act 31 is not ambiguous with respect to the penalty to be imposed after a conviction for underage drinking. Moreover, it is clear from the language of the Act that the legislature intended to prohibit an insurer from cancelling or refusing to renew an insurance policy as a result of a license suspension based upon underage drinking.

However, even if there exists some ambiguity in the language of Act 31 and its relation to Act 78, Section 1921(c)(8) of the Statutory Construction Act provides that

"[w]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters; ... Legislative and administrative interpretations of such statute." This Court has consistently held that an administrative agency charged with the execution and application of a statute or its regulations is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous. *Neifert v. Pennsylvania State Horse Racing Commission*, 130 Pa.Commonwealth Ct. 222, 567 A.2d 789 (1989); *Spicer v. Department of Public Welfare*, 58 Pa.Commonwealth Ct. 558, 428 A.2d 1008 (1981); *Fumo v. Insurance Department*, 58 Pa.Commonwealth Ct. 392, 427 A.2d 1259 (1981).

Based on the arguments presented and an analysis of the statutes involved, this Court cannot say that the Department erred as a matter of law in its interpretation of the relevant statutory provisions in the matter *sub judice*. The order of the Insurance Commissioner must therefore be affirmed.

## ORDER

AND NOW, this 23rd day of October, 1991, the order of the Insurance Commissioner is affirmed.