622 A.2d 406

AMERICAN MOTORISTS INSURANCE COMPANY, Petitioner,

v.

INSURANCE DEPARTMENT OF PENNSYLVANIA
and Constance B. Foster, Insurance
Commissioner, Respondents.

Commonwealth Court of Pennsylvania.

Argued April 7, 1992.

Decided Dec. 31, 1992.

Publication Ordered March 17, 1993.

Karen M. Balaban, for petitioner.

Zella M. Smith, for respondents.

Before SMITH and KELLEY, JJ., and LEDERER, Senior Judge.

KELLEY, Judge.

American Motorists Insurance Company (American Motorists) petitions for review of an August 26, 1991 decision of the Insurance Commissioner (Commissioner), which determined that American Motorists nonrenewal of Samuel and Anna Borgias' (Borgias) automobile insurance policy was in violation of the Act of June 5, 1968 (Act 78), P.L. 140, *as amended*, 40 P.S. §§ 1008.1–1008.11. We affirm.

The Borgias owned a 1984 Honda Accord and a 1987 Honda Accord. In July of 1990, the Borgias deleted coverage under the policy for the 1987 Honda Accord and requested replacement coverage for a 1985 Porsche 944. Pursuant to the policy terms, American Motorists issued an endorsement to include the Porsche. The endorsement provided coverage to the end of the policy's term. By notice dated September 25, 1990, American Motorists notified the Borgias that their policy would be terminated and not renewed effective November 27, 1990. The notice provided the following explanation for the action:

YOUR VEHICLE IS A SPORTS CAR. THIS AUTO IS BOTH ATTRACTIVE TO CAR THIEVES AND EASY TO DAMAGE. IN OUR JUDGMENT IT POSES A HIGH CHANCE OF LOSS. THEREFORE, WE WILL NOT BE RENEWING YOUR POLICY. THERE ARE OTHER COMPANIES THAT USE DIFFERENT GUIDELINES. WE SUGGEST YOU CONTACT YOUR AGENT TO ARRANGE FOR OTHER COVERAGE.

Reproduced Record (R.) at 2a.

American Motorists is one of four companies that are part of Kemper National P & C Companies (Kemper). Kemper has established a list of unacceptable personal auto risks and

provides the list to member company underwriters. Porsche 944's, as well as other types of speciality and high performance cars, are on the list. American Motorists based its determination of nonrenewal on the list provided to it by Kemper. The Porsche 944 is considered a high risk vehicle because of its high performance capabilities and its high frequency of theft claims as determined by loss statistics complied by the Highway Loss Data Institute (HLDI).[1]

Our scope of review in this matter is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the findings of fact are not supported by substantial evidence. *Komada v. Browne*, 97 Pa. Commonwealth Ct. 19, 508 A.2d 1284 (1986).

American Motorists claims that its statistical data shows that the Porsche 944 has a significantly higher number of theft and collision claims and average loss payments than the average private passenger vehicle, including the 1987 Honda Accord which it replaced, evidencing a material increase in the risk of loss to the insurer. In turn, American Motorists contends that a material increase in the risk of loss based upon a vehicles statistical loss history is a good reason for nonrenewal under Act 78.[2]

In her adjudication, the Commissioner concluded that American Motorists' action did not constitute a good reason to nonrenew under Act 78 as interpreted in *Samilo v. Pennsylvania Insurance Department*, 98 Pa. Commonwealth Ct. 232, 510 A.2d 412 (1986), because the company possesses the data necessary to allow it to rate the risk of loss associated with insuring the Porsche.[3]

1. In her adjudication, the Commissioner found that HLDI is funded by the insurance industry to collect data which insurers use in calculating auto rates.

2. Section 3 of Act 78 lists specific reasons which may not be used by an insurer to refuse to renew automobile insurance, none of which exist in the present matter.

3. But we note that had the Borgias been first time applicants, American Motorists could have refused to write the policy in accordance with section 6 of Act 78, 40 P.S. § 1008.6.

In *Samilo,* the policy holder had been involved in an auto accident after which his insurer refused to renew his policy. Samilo challenged the nonrenewal, but admitted that drinking had been involved in the accident. We concluded that the insurer had good reason to refuse to renew based on Samilo's concession that he had an accident while under the influence of alcohol.

Likewise, in *Erie Insurance Co. v. Foster,* 126 Pa. Commonwealth Ct. 600, 560 A.2d 856 (1989) we held that the deliberate failure of a policy holder to disclose his hearing impairment in an attempt to conceal underwriting information from his insurer represented a material risk of loss to the insurer which warranted nonrenewal of automobile insurance.

We find the set of facts in the present matter distinguishable from *Samilo* and *Erie Insurance Company,* because American Motorists is clearly able to define the risk that is associated with the coverage they are being asked to provide. American Motorists would have us conclude that an insurance company that does not rate or write coverage on high performance or speciality cars is not required to renew auto insurance policy by charging a premium appropriate to the risks associated with the replacement vehicle. We disagree.

Contrary to the position advanced by American Motorists, the record in the present matter is replete with statistical data presented by American Motorists that illustrates its ability to rate the risk associated with Borgias' Porsche.

This court has consistently held that an administrative agency's interpretation of a statute or its regulations is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it is clear that such construction is erroneous. *See Neifert v. Pennsylvania State Horse Racing,* 130 Pa. Commonwealth Ct. 222, 567 A.2d 789 (1989). Based on our review of the evidence presented in this case and our analysis of the relevant case law interpreting Act 78, we find that the Commissioner did not err in the present matter.

Accordingly, the order of the Commissioner must therefore be affirmed.

## ORDER

NOW, this 31st day of December, 1992, the order of the Insurance Commissioner, dated August 26, 1991, at No. P90–12–02, is affirmed.