**ERIE INSURANCE COMPANY,**
Petitioner,

v.

**DEPARTMENT OF INSURANCE,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 23, 1994.

Decided Dec. 29, 1994.

Thomas E. Brenner, for petitioner.

Stephen F.J. Martin, Deputy Chief Counsel, for respondent.

Before DOYLE and FRIEDMAN, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

Erie Insurance Company (Erie) petitions for review of a November 29, 1993 order of the Insurance Commissioner which affirmed the Insurance Department's (Department) decision holding that Erie's non-renewal of James S. Reagan's automobile insurance policy violated the Act of June 5, 1968 (Act 78), P.L. 140, *as amended,* 40 P.S. §§ 1008.1–1008.11. We reverse.

Erie was assigned to provide automobile insurance for Reagan under the Pennsylvania Assigned Risk Plan.[1] Erie asserts that during its assigned risk coverage of Reagan, it sent him underwriting questionnaires on June 27, 1991, and July 8, 1991.[2] The questionnaires stated in part, that "[y]our failure to complete and truthfully answer all questions and return this questionnaire *may jeopardize* your future automobile insurance." (Emphasis added.) Reagan did not respond to either one of these questionnaires.

---

1. The Pennsylvania Assigned Risk Plan was established by Section 1741 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1741.

2. In her adjudication, the Commissioner determined that Erie failed to prove that it mailed the questionnaires. Erie contends in its appeal that the Commissioner erred in this finding; and, the

Department admits through its Counterstatement of the Case in its brief that the first and second questionnaires were sent. Therefore, since the parties do not dispute this issue, we will accept the assertion that the questionnaires were sent as an established fact.

Pursuant to the Plan, Erie then issued Reagan a mandatory "take-out" policy. The policy term was from September 12, 1991, to September 12, 1992. On May 21, 1992, Erie sent Reagan another underwriting questionnaire, which pertained to the "take-out" policy, to which Reagan did not immediately respond. The questionnaire stated, in part, that "[f]ailure to comply *will jeopardize* the continuation of your insurance protection." (Emphasis added.)

On July 9, 1992, Reagan received a notice of non-renewal for his automobile insurance with an effective date of September 12, 1992. The notice stated in pertinent part:

> On June 27, 1991, July 8, 1991 and May 21, 1992, we wrote to you requesting that you complete an Underwriting Questionnaire. We have received no response. We are not renewing your policy because we cannot underwrite and rate your account without the requested information.

Upon receipt of this notice, Reagan responded to the third questionnaire and returned it to Erie on July 22, 1992, a date prior to the effective date of the termination of his policy.

On August 11, 1992, the Department determined that Erie's refusal to renew Reagan's insurance policy violated Act 78. Erie filed a Motion for Reconsideration and a hearing was held October 28, 1993. On November 29, 1993, the Commissioner denied Erie's motion and affirmed the Department's decision. It is Erie's appeal from the Commissioner's order that is presently before this Court.[3]

The resolution of this matter involves Section 3(a) of Act 78, 40 P.S. § 1008.3(a), that delineates the specific reasons which are prohibited from being used by an insurer to cancel, refuse to write, or refuse to renew an automobile insurance policy.

▮ The essence of Erie's argument is that it did not violate Act 78 because "good cause" existed for the non-renewal of Reagan's automobile insurance. Erie asserts that Reagan's failure to respond to the un-

derwriting questionnaires, which is a violation of the terms and conditions of the insurance policy, constituted a good cause for the refusal to renew. Erie further asserts that it provided proper and adequate warning of the non-renewal.

The Commissioner's decision was based upon this Court's holding in *Samilo v. Insurance Department*, 98 Pa.Commonwealth Ct. 232, 510 A.2d 412 (1986). The Court in *Samilo* held that "[a]ny good reason not specifically stated in Section 3 of Act 78 as a reason for refusing to renew a policy may be considered by the insurer in its determination regarding renewal." *Id.* at 235, 510 A.2d at 413. The Commissioner also based her decision on *American Motorists*, and *Erie Insurance Company v. Foster*, 126 Pa.Commonwealth Ct. 600, 560 A.2d 856 (1986), which dealt with the interpretation of the term "good reason." We find that the Commissioner mischaracterized the holdings of those cases when she stated that they hold that a good reason is one which represents a material risk of loss to the insurer. That is not the precise holding of those cases.

In *American Motorists*, the American Motorists insurance company notified the insured that his automobile insurance policy would not be renewed after the insured requested replacement coverage for a newly acquired Porsche. American Motorist refused to renew because a Porsche is attractive to theft and easy to damage, thereby posing a high chance of loss. This court held that American Motorist violated Act 78 because it did not have good cause to non-renew the automobile insurance, since it was able to define the risk that was associated with insuring a Porsche, rate the coverage, and charge the insured the appropriate premiums.

In *Erie Insurance Co.*, Erie refused to renew the insured's policy because the insured had misrepresented his hearing impairment on an underwriting questionnaire. Erie satisfied the three prong test for denial of coverage based upon misrepresentation,

---

3. Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the findings of facts are supported by substantial evidence. *American Motorists Insurance Co. v. Insurance Department*, 154 Pa.Commonwealth Ct. 17, 622 A.2d 406 (1992).

which is: (1) the declaration must be false; (2) the subject matter must be material to the risk; and (3) the insured must have known it to be false and made the declaration in bad faith. *Allstate Insurance Co. v. Stinger*, 400 Pa. 533, 163 A.2d 74 (1960). This Court's specific holding was that good cause existed because the insured made a material misrepresentation.

The most recent case addressing Act 78 is *Aetna Casualty & Surety Co. v. Insurance Department*, 536 Pa. 105, 638 A.2d 194 (1994). This case reiterates the holding in *Samilo;* that is, when considering whether the insurer violates Section 3 of Act 78 any good reason not specifically prohibited may be considered. When the insurer's reason for non-renewal is not one specifically prohibited by Act 78, it must be determined whether or not such reason is merely a pretense for a prohibited ground. *Aetna.* Furthermore, an "insurer's reason for non-renewal, which is not specifically enumerated in Section 3, is not transformed into a violation of Act 78 upon the Insurance Commissioner's determination that an insurer failed to establish that the reason is related to a material increase in the risk of loss." *Id.* at 116, 638 A.2d at 199.

■ In the present case, the Commissioner's conclusions of law are contrary to *Aetna.* The Commissioner's conclusions of law state in pertinent part:

> 2. An insurer may nonrenew an automobile insurance policy for a nonprohibited reason, as long as the reason for the action is a "good reason". A "good reason" is one that materially increases the risk of loss to an insurer.

> . . . . .

> 4. Erie Insurance Company has not satisfied its burden of proving that nonrenewal

is based on a reason that would materially increase the risk of loss.

As declared in *Aetna,* a material increase in the risk of loss is merely one factor that can be used to decide whether good cause exists to nonrenew; it is not the sole factor.

■ Turning to the facts of the case now before us, we hold that Erie showed good cause to justify the non-renewal of Reagan's automobile insurance.[4] Although the purpose underlying Act 78 is to protect policyholders from an improper non-renewal or a cancellation, insurers are not without recourse when good cause exists to non-renew. *See State Farm.* Petitioner's use of the questionnaires in order to determine the rates and liability is reasonable, and its requirement, that such questionnaires be responded to or the insured risks jeopardizing continued coverage, is a reasonable requirement. Insurance companies rely upon an insured's response to questionnaires in ascertaining whether any changes relating to coverage have occurred, assessing its future liability and rating the policy.

Reagan failed to respond at all to the first two underwriting questionnaires and he failed to timely respond to the third questionnaire, only providing partial information when he did respond.[5] Moreover, Reagan did not comply with the terms and conditions of his policy. The policy stated in pertinent part: "You agree to cooperate with us by promptly and truthfully answering all questions about drivers and autos we insure and signing all papers relating to such insurance." Reagan's noncompliance with the terms of his policy combined with his failure to respond, or respond in a timely manner, to questionnaires, constituted good cause for Erie to non-renew Reagan's policy.

■ The Commissioner also argues that Erie's questionnaires did not adequately

---

4. The insurer has the burden of proving good cause. *State Farm Mutual Automobile Insurance Co. v. Department of Insurance,* 134 Pa.Commonwealth Ct. 226, 578 A.2d 999 (1990) *petitions for allowance of appeal denied* 527 Pa. 595, 588 A.2d 915, and, 527 Pa. 595, 588 A.2d 915 (1991).

5. To the third questionnaire, Reagan responded affirmatively to the question inquiring about violations for speeding or other motor vehicle violations during the past five years, but in the follow up question requesting details, he responded that he had forgotten the details. The sufficiency of this partial response is not the determining factor on the issue of good cause since Erie in oral argument admitted that it has the ability to discover the existence of motor violations through the use of the insured's license number.

warn Reagan that his policy would not be renewed if he failed to respond. The initial two questionnaires contained language stating that failure to complete and return the questionnaire *may jeopardize* future coverage. The third questionnaire stated that failure to complete and return the questionnaire *would jeopardize* continuation of coverage. Although it is our view that Erie should have provided a more specific warning, the warnings provided to Reagan were nevertheless adequate enough and the insured was given an opportunity to prevent non-renewal had he completed the third questionnaire.

Accordingly, the order of the Commissioner is reversed.

### ORDER

NOW, December 29, 1994, the order of the Pennsylvania Insurance Commissioner in the above-captioned matter is hereby reversed.