**Pestcoe v. Nisenzone**

C.P. of Philadelphia County, no. 9408-3947.

*Edwin P. Smith,* and *Marc Greenfield,* for plaintiffs.
*James C. Haggerty, Wayne Schaible,* and *Lewis R. Olshin,* for defendants.

MAIER, *J.,* October 20, 1995—The above-captioned matters have been presented to this court by movants, who are each seeking a motion in limine to prevent defendants from raising a limited tort waiver defense. The court has, in effect, been asked to determine the adequacy of certain "limited tort" waiver forms[1] pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law. 75 Pa.C.S. §1701 et seq. Jurisdiction has been conferred on this court pursuant to Philadelphia Civil Rule 206.2 and administrative order of the Honorable Alex Bonavitacola.

## BACKGROUND

The Pennsylvania Legislature's most recent attempt at automobile insurance reform is the Pennsylvania Motor Vehicle Financial Responsibility Law. 75 Pa.C.S. §1701 et seq. The PMVFRL sought to reduce the cost of auto insurance coverage through a variety of measures including "tort waiver" elections which effectively limit one's right to seek financial compensation for certain vehicular injuries. The law requires that insurers provide

1. The "limited tort" waiver is a document signed by a party indicating that party's selection of limited tort auto insurance coverage which, under certain circumstances, limits the insured's right and the rights of members of the insured's household to seek financial compensation for injuries caused by other drivers.

written notice to insureds concerning available tort options, basic coverages and in some instances—cost comparisons. 75 Pa.C.S. §1701 et seq.

In order to effectuate such waivers, the PMVFRL provides two similar yet distinct "notice/waiver" forms to be used in the dissemination of such information to existing policyholders and new applicants. Specifically, the PMVFRL requires that a section 1705(a) notice containing cost comparisons be sent to the insured at least 45 days prior to the first issuance (section 1705(a)(4)) or first renewal (section 1705(a)(1)) of a policy on and after July 1, 1990. 75 Pa.C.S. §1705(a). This section 1705 notice requires a cost comparison of proposed rates for full tort coverage and limited tort coverage. 75 Pa.C.S. §1705(a)(1)(A)(B). Similarly, the PMVFRL requires that a section 1791.1 notice be sent to insureds at the time of application for original coverage and every renewal thereafter. 75 Pa.C.S. §1791.1. The section 1791.1 notice does not require cost comparisons. 75 Pa.C.S. §1791.1(b).

This apparent conflict in notice requirements is the crux of the consolidated motions before this court. Plaintiffs contend that the PMVFRL requires the issuance of a section 1705(a) notice and that the section 1791.1 notices (they received and signed) were inadequate due to the absence of cost comparisons. Plaintiffs further contend that the assigned risk plan's notice/waiver form (entitled "PA-1000") does not comply with section 1705 of the PMVFRL. Consequently, plaintiffs argue that their elections of "limited tort" coverage pursuant to section 1791.1 and PA-1000 are invalid and seek an order precluding the defendants from asserting a "limited tort" defense at trial. The defendants and the Insurance Department of Pennsylvania contend that any apparent conflict in the PMVFRL's notice requirement was resolved by the insurance department's "statement

of policy" amending the PMVFRL on April 13, 1990. *(Infra)*

## DISCUSSION

The Insurance Department of Pennsylvania is statutorily empowered to implement and enforce the insurance laws of this Commonwealth. 75 Pa.C.S. §1704. This responsibility is coupled with the authority to promulgate administrative regulations which are as valid and binding as the statute under which they are adopted. *Jones v. Travelers Insurance Co.,* 356 Pa. Super. 213, 514 A.2d 576 (1986). Moreover, those regulations are entitled to substantial deference by the courts and may be disregarded or overturned only where clearly erroneous. *Philadelphia Suburban Corporation v. Commonwealth,* 144 Pa. Commw. 410, 601 A.2d 893 (1992); *Nationwide Mutual Insurance Co. v. Foster,* 143 Pa. Commw. 433, 599 A.2d 267 (1991); *State Farm Automobile Insurance Co. v. Department of Insurance,* 143 Pa. Commw. 259, 598 A.2d 1344 (1991).

In 1990, the Insurance Department of Pennsylvania issued a "statement of policy" through its office of rate and policy regulation to provide guidance to auto insurers as to the PMVFRL's notice requirements. See 31 Pa. Code chapter 68. Said administrative regulations advised auto insurers that "section 1705(a) notices apply to existing policyholders and for the initial renewal of those policies after July 1, 1990." *Id.* [Note: The annual renewal occurs at the annual anniversary date of the policy's original issuance. *Id.]* The "statement of policy" also confirms that "second and subsequent renewals of those policies as well as new policies after July 1, 1990 must be given notice under section 1791.1." See 31 Pa. Code §68.106-§68.108.

In accordance with the statutory authority and relevant case law cited above, this court may rule contrary to the insurance department only where the department's actions are clearly erroneous. *(Supra)*

The matter before us may be simply stated. That is, when an individual is renewing or purchasing an insurance policy and they are presented with the option of choosing limited or full tort coverage, whether those people must be informed as to the cost of limited tort versus full tort. The insurance department has indicated, through their statement of policy, that each purchaser of insurance, *i.e.,* a consumer is not entitled to the financial data which discloses the comparative costs of limited versus full tort coverage. This court believes that position and notice by the insurance department is clearly erroneous.

No one can deny the plethora of activity on behalf of consumers, generally as well as in the insurance industry, for example, plain language insurance policies, banks and other lending agencies are required to set forth the interest rates that consumers are required to pay, *i.e.,* the Truth In Lending Act (15 U.S.C., 12 CFR §226.30), the Consumer Credit Protection Act (15 U.S.C. §1601 et seq.), the Unfair Trade Practices and Consumer Protection Law (P.L. 1224, no. 387), the Consumer Product Safety Act (15 U.S.C. §2051 et seq.), the Consumer Goods Pricing Act (P.L. 94-145) and the Consumer Leasing Act (P.L. 94-240, 15 U.S.C. §1640). Despite the outpouring of consumer notice and protection legislation and governmental policies assuring consumer notice, the insurance department would have us deny to the consumer the most important information necessary in making an informed auto insurance benefit selection, that is, the cost of limited tort as opposed to full tort coverage.

Certainly all would agree that a consumer would be aghast if the insurance agent, in writing a policy, refused to disclose the policy cost. If the individual needs the information regarding the cost of the policy, certainly they should have the same information when making a choice as important as whether or not they select limited or full tort option. Without an informed choice, the stated legislative intent of ins rance cost reduction can never be realized.

It is clear beyond question that such information is made available to consumers every day in purchasing insurance, in purchasing stamps, in purchasing food at the food store, in lending, just about every area of life. The failure to state the financial cost information required by section 1705 is clearly erroneous.

Respondents suggest that section 1791.1(d) allows an insured to discover the policy costs guaranteed in section 1705 by imposing on the insured an additional burden of contacting the insurer in order to ascertain the difference in tort level costs. 75 Pa.C.S. §1791.1(d). The PMVFRL provides in pertinent part:

"Upon an oral or written request, an insurer subject to this chapter shall provide to the requestor information on the requestor's cost to purchase from the insurer the minimum requested automobile insurance coverages under either of the two options described in section 1791.1(b). These requirements shall include the request for and provision of information by telephone." 75 Pa.C.S. §1791.1(d).

Section 1791.1(b) clearly supports the right of an insurance consumer to know the cost comparisons of limited or full tort coverage, as set forth in section 1705 but attempts to shift the burden from the carrier to the individual consumer. The attempt to require a consumer to take additional action to ferret out limited

or full tort cost is unquestionably against public policy which mandates informing consumers and the express intent of the PMVFRL, as set forth in section 1705 thereof. 75 Pa.C.S. §1705.

While some may believe that section 1791.1 prevails over section 1705 because of the Statutory Construction Act, this phenomenon occurs only when the provisions of two competing statutory sections are irreconcilable. 1 Pa.C.S. §1935. Here, since section 1705 provides the necessary information required of a purchaser of an insurance policy and section 1791.1 is so clearly against public policy, no irreconcilable difference exists and consequently, that rule of statutory construction does not pertain.

For the reasons set forth, the court holds that section 1705 notices are required for all applicants for new auto insurance policies and first renewals whereas section 1791.1 notices may be utilized for all second and subsequent renewals of existing policies.

Plaintiffs also contend that PA-1000 assigned claims plan notices are invalid as they are contrary to section 1705. The Pennsylvania Legislature called for the establishment of an assigned risk plan and empowered the insurance department to promulgate rules and regulations necessary for its administration. 75 Pa.C.S. §1741; 31 Pa. Code §68.101 et seq. Section 1741 of the PMVFRL provides in pertinent part:

"The insurance department shall ... adopt a reasonable assigned risk plan for the equitable apportionment among those insurers of applicants for motor vehicle liability insurance who are entitled to, but are unable to procure insurance through ordinary [means]" on the open market. 75 Pa.C.S. §1741; see *Motorists Mutual Insurance v. Insurance Commissioner,* 137 Pa. Commw. 638, 640, 586 A.2d 1050, 1051 (1991).

Consequently, the plan established an unincorporated association of auto insurers to achieve this end. *Pennsylvania Assigned Risk Plan v. Grode,* 106 Pa. Commw. 472, 526 A.2d 849 (1987); *Motorists Mutual Insurance v. Insurance Commissioner, supra.* Every insurer licensed in the Commonwealth of Pennsylvania was required to participate in the plan and abide by its rules and procedures. *Id.* In an effort to foster uniformity, the plan created a statewide standardized "notice/waiver" form (entitled "PA-1000") to be distributed to individuals upon application to the plan. (Pennsylvania assigned risk plan rules §11.) Similar to insureds on the open market, applicants with the assigned risk claims plan must select from, apply and pay for, various levels of insurance coverage. These consumers are likewise entitled to the full disclosure of competing tort level costs.

A reiteration of this court's findings reveals that section 1705 governs all new auto insurance policies and first renewals whereas section 1791.1 governs second and subsequent renewals. Significantly, PA-1000 fails to comply with section 1705 yet rigidly mirrors section 1791.1 in shape and substance.

Therefore, it is the opinion of this court that PA-1000 is invalid with respect to new policies and first renewals consistent with the rationale previously delineated in this opinion. However, the court also finds that PA-1000 is a valid and enforceable waiver as to second and subsequent renewals consistent with the applicability of section 1791.1.

Accordingly, in the case of *Jacobs* and *Pali,* where plaintiff signed a limited tort waiver during an original application for new auto insurance coverage or upon subsequent renewal, after July 1, 1990, when the waiver did contain section 1705 language, the motion in limine

is denied and defendants may raise the limited tort defense at trial.

In the case of *Pestcoe, Henderson, Havel, Briggs, Urquhart, Morrell, Diaz, Schlacter, Davis, Enoch, Fuller, Sarne, Belcher* and *Mann*, where plaintiff signed a limited tort waiver during an original application for new auto insurance policies or on a first renewal, after July 1, 1990, when the waiver did not contain requisite section 1705 language, the motion in limine is granted and defendants are precluded from raising the limited tort defense at trial.

In the case of *Robinson* and *DeMarco*, where plaintiff signed a limited tort waiver during a second or subsequent renewal of insurance coverage, when the waiver did not contain the section 1705 language, the motion in limine is denied and defendants may raise the limited tort defense at trial.

In the case of *MiSook-Suh-Kim, Mattox, Bazzell, Sutlon, Zambriczki, Donnelly, Pendrak, Hogeland, Prescott, Sourovelis, Rodriguez, Abdelshahid, Williams, Larmer, Chanis, Brown, Grant, Smith, Tomlin, Russell, Trulear, Abdelghani, Stern, Touch, Lane, Morgan, Johnson, Watson, Joseph, McAteer, Evans, Clerge, Enoch, St. Clair, Morales, Coppage, Reed* and *Breitweiser*, where plaintiff signed a limited tort waiver from an assigned risk plan participant, *i.e.*, the PA-1000 form, during an original application for new auto insurance or a first renewal, after July 1, 1990, the motion in limine is granted and defendants are precluded from raising the limited tort defense at trial.

In the case of *James* and *Martinez*, where plaintiff signed a limited tort waiver from an assigned risk plan participant, *i.e.*, the PA-1000 form, during a second or subsequent renewal, the motion in limine is denied and defendants may raise the limited tort defense at trial.