DONEGAL MUTUAL INSURANCE COMPANY, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF INSURANCE, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 11, 1997.

Decided May 27, 1997.

Matthew J. Creme, Jr., Lancaster, for petitioner.

Michael F. Consedine, Department Counsel, for respondent.

Before DOYLE and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Donegal Mutual Insurance Company (Donegal) petitions for review of the March 18, 1996 order of the Insurance Commissioner (Commissioner) which found that Donegal had failed to establish it properly notified its insured, Janet Stuart (Stuart) that Donegal was cancelling Stuart's automobile insurance policy for nonpayment of premium. The issue presented for our review is whether the Commissioner erred as a matter of law in determining that a copy of the notice of cancellation actually sent to the insured must be produced at the hearing before the Commissioner to show compliance with section 5 of Act 78.[1]

Effective May 23, 1992, Donegal issued an automobile insurance policy to Stuart. In August of 1992, Donegal issued Stuart an invoice for an unpaid premium in the amount of $303.00. Stuart failed to pay the premium. On August 20, 1992, Donegal mailed Stuart a notice of cancellation to her address in Salix, Pennsylvania. The day before this notice was sent, Stuart informed her local agent that she had moved and informed the agent of her new address in Johnstown, Pennsylvania. On September 8, 1992, Donegal sent a second notice of cancellation, this time to the Johnstown address. In late October, Stuart sent Donegal $50.00 toward the payment of her outstanding premium. Donegal cancelled Stuart's policy, effective September 26, 1992.[2]

On March 26, 1993, Stuart requested a review hearing before the Commonwealth Insurance Department (Department). By letter dated March 26, 1993, the Department informed Stuart her request for review was untimely, as it was not made within thirty days after the policy in question was cancelled. The letter informed Stuart of her right to a formal hearing before the Commissioner, which Stuart exercised.

The hearing before the Commissioner was held November 30, 1993.[3] At the hearing, Donegal presented the testimony of Karen E. Lawrence, Supervisor of Personal Accounting. Ms. Lawrence testified as follows: that as of August 1992, an invoice was issued

---

**1.** Act of June 5, 1968, P.L. 140, *as amended*, by the Act of October 5, 1978, P.L. 1060, 40 P.S. § 1008.5. Section 5 requires an insurer to mail or deliver to the named insured at the address shown in the policy a written notice of cancellation or refusal to renew. The notice shall:

   1) Be approved as to form by the Commissioner prior to use;

   2) State the date, not less than sixty days after the date of mailing or delivering on which the cancellation or refusal to renew shall become effective;

   3) State the specific reasons of the insurer for cancellation or refusal to renew;

   4) Advise the insured of the right to request in writing, within thirty days of receipt of the notice of cancellation or intention not to renew, that the Commissioner review the actions of the insurer;

   5) Advise the insured of the possibility for insurance through the automobile assigned risk plan;

   6) Advise the insured he must obtain compulsory automobile insurance coverage if he oper-

ates or registers a motor vehicle within the Commonwealth, that the insurer must notify the Department of Transportation that the insurance is being cancelled or not renewed, and that the insured must notify the Department that he has replaced said coverage; and

   7) Where applicable, clearly state coverage is terminated due to nonresponse to a citation imposed under 75 Pa.C.S. § 1533 and that coverage will not be terminated if the insured provides proof that the insured has responded to the citations and paid all fines and penalties and that the insured has done so on or before the termination date of the policy.
40 P.S. § 1008.5.

**2.** Pursuant to Section 4 of Act 78, 40 P.S. § 1008.4, an insurer may cancel a policy for nonpayment of premium.

**3.** Chief Hearing Officer Kevin Frederick presided over the hearing.

to Stuart for the unpaid premiums. Stuart failed to pay the premium and therefore, Donegal issued a notice of cancellation on August 18, 1992. This notice was sent to Stuart's address in Salix, Pennsylvania on August 20, 1992. After learning Stuart had moved, Donegal issued a second notice of cancellation on September 3, 1992. The second notice was sent to Stuart's address in Johnstown, Pennsylvania on September 8, 1992.

In order to satisfy its burden under section 5 of Act 78, Ms. Lawrence produced certificates of mailing for both the August 20 and September 8, 1992 mailings. She also produced printouts from Donegal's data processing unit which listed those clients Donegal issued notices of cancellation and the date those notices were issued and mailed. (Exhibits D2 and D6; Reproduced Record "R.R." 47 and 54). Stuart's name was listed among those who had been issued a notice of cancellation. In addition, Ms. Lawrence noted there was no indication in Stuart's file that any of the mailings had been returned to Donegal.

Ms. Lawrence further testified that in the normal course of business, Donegal does not keep copies of individual notices of cancellation in a client's file. Thus, at the hearing she produced a blank copy of a notice of cancellation.

A cancellation memo was produced by Donegal on September 28, 1992, which detailed the payment history of Stuart's policy. According to Ms. Lawrence, Donegal sent this memo to Stuart. Since Donegal apparently maintains copies of its cancellation memos, Ms. Lawrence was able to produce a copy of this memo at the hearing.

Stuart testified that prior to her move in August, she notified her local agent of her new address. Stuart maintained that from August until November, she did not receive any notices from Donegal. She stated that in late October she contacted her local agent

because she was concerned she did not receive any notices from Donegal. Stuart stated that at that time, her local agent sent her the bottom portion or "stub" of the cancellation notice and she then tendered a check to Donegal for $50.00. Stuart testified that it was not until November that she learned Donegal had cancelled her insurance and then, the letter indicating her insurance was cancelled did not inform her of her right to appeal Donegal's cancellation of her policy. Stuart stated she did not have any problems receiving mail at either her old or new addresses. Stuart did, however, admit she received a document from Donegal, but stated she believed it was a notice of nonrenewal.

The Commissioner found in favor of Stuart, stating that although Donegal had provided credible evidence it mailed certain documents to Stuart, it had not proven that the documents mailed were the notices of cancellation.[4] This petition for review followed.

■ The issues presented for the Court's review are 1) whether the Commissioner committed an error of law in determining that a copy of the notice of cancellation must be produced in order for there to be sufficient evidence of notice to the insured, and 2) whether the Commissioner erred in determining Stuart's request for review was timely. Our scope of review is limited to whether constitutional rights have been violated, an error of law has been committed, or whether the necessary findings are supported by substantial evidence. *American Motorists Insurance Co. v. Insurance Department of Pennsylvania*, 154 Pa.Cmwlth. 17, 622 A.2d 406 (1992).

■ Donegal has the burden of proving it complied with Act 78 in cancelling Stuart's insurance policy. *See State Farm Mutual Automobile Insurance Co. v. Department of Insurance*, 134 Pa.Cmwlth. 226, 578 A.2d 999 (1990), *petition for allowance of appeal denied*, 527 Pa. 595, 588 A.2d 915 (1991).

---

4. In its brief to the Court, the Department argues that the Commissioner's decision was based, in part, on her knowledge of Donegal's past practices and ability to produce copies of notices of cancellation at other hearings. We reject this argument inasmuch as the Commissioner's decision does not cite Donegal's past practices as a basis for her decision. Further, those departmental decisions relied on in the Department's brief are distinguishable and prior to 1992. Quite simply, Donegal could have changed its filing practices after 1992.

To satisfy that burden, Ms. Lawrence, the Donegal representative, credibly testified to the Donegal printouts showing the dates which Donegal issued and mailed the notices of cancellation. The certificates of mailing corroborated the fact that indeed the notices were sent on the dates shown in the printouts. Neither mailing was returned to Donegal by the Post Office. It was customary for Donegal to obtain certificates of mailing when issuing notices of cancellation. This documentation was generated in the normal course of Donegal's business. Additionally, the Commissioner stated that it found Ms. Lawrence's testimony credible to show Donegal mailed items to Stuart. The Commissioner made no such credibility determination with respect to Stuart's testimony.

■ In *Pennsylvania Department of Transportation v. Brayman Construction Corporation–Bracken Construction Co.*, 99 Pa.Cmwlth. 373, 513 A.2d 562 (1986), a similar issue arose when Brayman Construction denied receipt of a letter from the Department of Transportation informing Brayman that the Department had approved drawings submitted in connection with the construction of a highway. "[W]hen a letter has been written and signed in the usual course of business and placed in the regular place of mailing, evidence of the custom of the establishment as to the mailing of such letters is receivable as evidence that it was duly mailed." *Id.* 513 A.2d at 566 (emphasis deleted)(citing *Christie v. Open Pantry Marts*, 237 Pa.Superior Ct. 243, 246, 352 A.2d 165, 166–67 (1975), quoting McCormick, *Evidence* § 195 at 464 (2nd ed.1972)). A mere denial that the item was received is not sufficient to overcome the presumption that the item was received. *Department of Transportation, Bureau of Driver Licensing v. Grasse*, 146 Pa.Cmwlth. 17, 606 A.2d 544 (1991).

■ In this particular case, we conclude that the Commissioner erred in determining that the proofs of mailing, along with Ms. Lawrence's credible testimony and the other documentation produced by Donegal, were insufficient to establish that the notices sent to Stuart on August 20 and September 8, 1992 were notices of cancellation. Proof of the office filing procedures with proof that the notice was written in the regular course of business and was placed in the normal course of mailing is sufficient to show receipt of the item. *Brayman*, 99 Pa.Cmwlth. 373, 513 A.2d 562 (1986).

With regard to the timeliness of Stuart's request for review, we note that the contents of the notice of cancellation are not in dispute.[5] In any event, our review of the sample notice of cancellation provided by Ms. Lawrence shows that Donegal's notice complies with the mandates of section 5 of Act 78. Therefore, as we find Donegal mailed two notices of cancellation to Stuart and these notices comply with Act 78, the Commissioner erred in finding Stuart's appeal was timely.[6]

Accordingly, the March 18, 1996 order of the Insurance Commissioner is hereby reversed.

### ORDER

AND NOW, this 27th day of May, 1997, it is hereby ORDERED that the order of the Insurance Commissioner of the Commonwealth of Pennsylvania dated March 18, 1996, is reversed.

---

5. Donegal argues that the Commissioner improperly applied the Best Evidence Rule. The Best Evidence Rule requires a party to produce an original document when the terms of the document are material to the issue at hand. *Hera v. McCormick*, 425 Pa.Superior Ct. 432, 625 A.2d 682 (1993). Here, as the contents of the notice of cancellation are *not in dispute*, the Best Evidence Rule is inapplicable.

6. Under Section 8(a) of Act 78, 40 P.S. § 1008.8(a), an insured may within twenty (20) days of the receipt of the notice of cancellation request in writing to the Insurance Commissioner that he review the actions of the insurer.