Loiselle v. Barsalow, No. S0730-01 CnC (Katz, J., Dec. 29, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                      SUPERIOR COURT
Chittenden County, ss.:                               Docket No. S0730-01 CnC


LOISELLE

v.

BARSALOW


ENTRY

This is a case about insurance coverage.  Plaintiff Loiselle had an auto accident on June 9, 2000.  She seeks coverage from her former insurer, the New Hampshire Indemnity Company, or from her insurance agent Barsalow.  New Hampshire Indemnity disclaims its coverage because it had cancelled Loiselle's auto insurance two months prior.

All parties agree that New Hampshire Indemnity attempted to cancel Loiselle's auto insurance in early April of 2000 for nonpayment of

premiums. The issue is whether New Hampshire Indemnity's notice of cancellation was effective for the purpose of 8 V.S.A. § 4226, which requires an insurer to send such notice by certified mail or obtain a certificate of mailing to prove that notice was sent. Barsalow has moved for summary judgment on this issue and argues that New Hampshire Indemnity cannot prove that they mailed the notice to Loiselle, who claims she never received the notice, and bars any New Hampshire claim that the policy was terminated. New Hampshire Indemnity has also moved for summary judgment based on an alternative theory of actual notice that Loiselle received from Barsalow's office when she called a few days prior to the accident.

As to Barsalow's motion, New Hampshire Indemnity claims that it mailed proper notice to Loiselle. For proof, it offers a copy of the cancellation notice—two photocopied sheets from its facsimile "certificate of mailing"—and the affidavit of Bill Conlin, an employee who maintains records at New Hampshire Indemnity. Barsalow argues that the alleged "certificate of mailing" does not conform to the format required by statute or the Postal Service. Under § 4226, there is no definition as to what a "certificate of mailing" entails. But Barsalow's argument is not really about the nature of a "certificate of mailing"; rather, it is a question of content and form. All parties can agree that the statutory term connotes a form of receipt that the Postal Service issues to prove a letter has been mailed but not necessarily received, as opposed to a "certified mailing," which provides proof of delivery. Under the current Postal Service guidelines, a "certificate of mailing" for three or more letters require a Form 3877 or facsimile that "contains the same information as the postal-provided form." (Def. Barsalow's Mot. for Summ. J., Jan. 26, 2004, at ex. 2 (S914 Certificate of Mailing)). These forms "become the sender's receipts" and "must be made by typewriter, ink, or ballpoint pen." Id.

Barsalow's argues that the second sheet of New Hampshire Indemnity's facsimile of Form 3877, the one where Loiselle's name and address is printed, is not signed or postmarked in the same manner as the first sheet. Barsalow argues that this causes the certificate, and thereby New Hampshire's proof of mailing, to fail. The problem with this argument is that it is not clear from Barsalow's evidence that a multipage Form 3877 requires signatures and postmarks on each and every page. The submitted document, while incomplete, is printed by computer, has corresponding titles and headers, and a numbering order that creates, at the very least, a presumption that the two are part of the same form. This is further bolstered by Conlin's affidavit that states the forms are part of a single certificate of mailing receipt that was sent in March and kept as a normal part of New Hampshire Indemnity's business records. Barsalow argues that Conlin's affidavit is hearsay as he does not establish the proper foundational information under V.R.E. 803 (6) (business records exception). This defect, however, was cured by Conlin's supplemental affidavit that identified himself and that nature of the business records at issue. Thus, the affidavit is acceptable and satisfies the foundational requirments for V.R.E. 803 (6). See, e.g., Olson v Hardware Dealers Mut. Fire Ins. Co., 156 NW2d 429, 431–33 (Wis. 1968) (business record affidavit and copies of certificate of mailing establish prima facie evidence of mailing); Donegal Mut. Ins. Co. v. Pennsylvania Dep't of Ins., 694 A.2d 391, 394 (Pa. 1997); see also Annotation, Proof of Mailing by Evidence of Business or Office Custom, 45 A.L.R.4th 476, at § 2 (1986) ("There seems little question that when a proper foundation is laid, evidence of a business or office mailing custom is admissible to prove the fact of a particular mailing.").

Since Conlin's affidavit and the "certificate of mailing" satisfy New

Hampshire Indemnity's burden of proof in regards to § 4226, the next question is whether the evidence satisfies New Hampshire's larger burden to prove that they sent notice of cancellation as a matter of law. In this case, notice is governed by 8 V.S.A. § 4224(a), which states:

> No notice of cancellation of a policy of insurance to which section 4223 of this title applies or of a policy issued under the Vermont automobile insurance plan shall be effective unless mailed or delivered by the insurer to the named insured at least 45 days prior to the effective date of cancellation, provided, however, that where cancellation is for nonpayment of premium at least 15 days' notice of cancellation shall be given.

This statute requires notice to be mailed or given 45 days prior to an effective cancellation, but it also provides a shorter period of notice (15 days) when the cancellation is for nonpayment. In this case, New Hampshire Indemnity cancelled Loiselle's insurance because of nonpayment. Therefore, the shorter period applies, and the question becomes what the phrase "cancellation shall be given" means.

The answer to this question is dependent on how we interpret the standards of § 4224(a). Barsalow urges us to interpret this phrase as analogous to the phrase "give receipt" that has been found to create a duty of actual receipt. Rocque v. Cooperative Fire Ins. of Vermont, 140 Vt. 321, 325 (1981) (finding that "giving notice" created a duty of "actual receipt" when the policy did not stipulate to the form of notice). The Rocque case, however, is not applicable to the present situation. First, the discussion in the case is about rebuttable presumptions and not statutory or contract language. Id. at 325–26. Second, the facts of the case deal with fire insurance and not liability insurance. The two areas are treated differently in insurance law, which leads to the third and arguably most important

difference.  As a fire insurance case, <u>Rocque</u> did not have the statutory requirements of § 4224 to govern the form and requirements of notice.

Still, the word "given" is not exactly clear when taken apart from the statute.  It could, if used alone, suggest a default application of the "general rule" quoted in <u>Rocque</u>, which would raise the burden on the insurer to do more than simply mail notice.  But, "given" is not without context.  As the statute reads, cancellation maybe effected by "mail or delivery" 45 days prior.  The statute allows for an exception in non-payment cancellations.  There, the insurer need only provide 15 days notice.  Thus, the 15 day provision must be read within the context of the larger rule of cancellation notices for liability insurance.  In this case "mailed or delivered" informs the term "given" and limits its possible meaning.  "Mail or delivery" defines the method of notice.  "[Fifteen] days notice . . . given" merely shortens the time requirement in cases of nonpayment.

To read the term "given" otherwise would mean that the legislature set up a more difficult and time consuming process for giving notice in a period affording less time to carry it out.  Such an absurd result makes for a disfavored interpretation. E.g. <u>Smith v. Tn. of St. Johnsbury</u>, 150 Vt. 351, 355 (1988).  Nonpayment cases are presumably—on the whole—those involving less responsible insureds; yet, we would be giving that group greater leeway to defeat cancellation after an insurable occurrence merely by testifying that they never received notice.  While this might not lead to greater coverage, it would spread its cost to policyholders in general.  More telling, such a reading would tip the evidentiary balance away from concrete business records—positive evidence—and toward self-serving, sometimes fraudulent and incapable-of-being-corroborated statements—negative evidence.  Finally, this interpretation would afford an ambiguous

term ("given") precedence over a specific one ("mailed or delivered"). This is inconsistent with the rules of statutory interpretation. In re Estate of Cote, 2004 VT 17 ("All relevant parts of the applicable statutory scheme are to be construed together to create, if possible, a harmonious whole."); Rutland Cable T.V., Inc. v. City of Rutland, 122 Vt. 1, 4 (1960) (when statutory language specifically enumerates, but is then followed by more general wording, latter held to include only those concepts similar in character to the specifically defined). We conclude that the term "given" cannot require anything more from insurers beyond "mailed or delivered." While it may require less, it certainly requires no more.

If there is any presumption created by §§ 4224 and 4226, it is in favor of New Hampshire Indemnity's mailing that satisfied the terms of §§ 4224 and 4226. Estey v. Leverille, 119 Vt. 438, 439 (1957) ("When a letter, properly addressed, is mailed there is a presumption of its receipt in due course."). This is consistent with other jurisdictions. 2 Couch on Ins. § 32:19 (3d ed. Supp. 2004) ("Even where proof of mailing is considered evidence of notice of cancellation, such proof is not conclusive and an insured can offer proof of nonreceipt for the purpose of refuting the hypothesis of mailing."). Most jurisdictions, though, require some affirmative evidence of non-receipt, such as the notice being returned or evidence of other claims of non-delivery. Id.; see also Donegal, 694 A.2d at 394 ("A mere denial that the item was received is not sufficient to overcome the presumption that the item was received."). Here Loiselle does not have any affirmative evidence other than the non-receipt of her notice to contest the proof offered by New Hampshire Indemnity. This cannot, as a matter of law, be enough to overcome the presumption and evidence that New Hampshire properly mailed notice of cancellation according to §§ 4224, 4226. Without acceptable evidence to rebut, New

Hampshire Indemnity mailed notice of cancellation to Loiselle, and it was not a insurer at the time of her accident.

As summary judgment is proper in New Hampshire Indemnity's favor based on its compliance with the statutory requirements of notice, the remaining issue, New Hampshire Indemnity's motion for summary judgment based on "actual notice," is moot. Based on the foregoing, defendant Barsalow's motion for summary judgment is denied. Defendant New Hampshire Indemnity's motion for summary judgment is granted.

Dated at Burlington, Vermont_____, 2004.